[Cite as *In re C.C.*, 2016-Ohio-1417.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

IN RE:   C.C.                                   :
                                                :
                                                :        C.A. CASE NO. 26864
                                                :
                                                :        T.C. NO. 2013-5270
                                                :
                                                :        (Civil appeal from Common Pleas
                                                :         Court, Juvenile Division)
                                                :
                                                :
                                    . . . . . . . . . . .

**O P I N I O N**

Rendered on the ___1st___ day of ____April____, 2016.

. . . . . . . . . . .

ANN M. GRABER, Atty, Reg. No. 0091731, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Appellee Montgomery County Children's Services

DANIEL F. GETTY, Atty. Reg. No. 0074341, 46 East Franklin Street, Centerville, Ohio 45459
        Attorney for Appellant Mother

. . . . . . . . . . . . .

DONOVAN, P.J.

{¶ 1} Defendant-appellant C.G. (hereinafter "Mother") appeals a judgment of the Montgomery County Court of Common Pleas, Juvenile Division, adopting a magistrate's decision which overruled her objections and granted temporary custody of the minor child,

C.C., age fifteen, to the maternal grandmother, F.P., with protective supervision granted to Montgomery County Children's Services (hereinafter "MCCS"). The trial court's "Decision and Judgment Concerning Objections to the Decision of the Magistrate" was issued on March 2, 2015.

{¶ 2} Mother filed a timely notice of with this Court on March 6, 2015. On May 5, 2015, we issued an order wherein we directed Mother to show cause why the appeal should not be dismissed for lack of jurisdiction. Specifically, we questioned whether the trial court's decision issued on March 2, 2015, was a final appealable order in light of our decision in *Bennett v. Bennett*, 2012-Ohio-501, 969 N.E.2d 344 (2d Dist.). On June 24, 2015, C.G. filed a motion to amend the trial court's decision in order to conform to our holding in *Bennett*. Mother filed her motion to amend in the trial court. On July 2, 2015, the trial court filed an "Amended Decision and Judgment Concerning the Decision of the Magistrate" which purported to be a final appealable order in line with *Bennett*. Nevertheless, on July 9, 2015, we issued a decision and final judgment entry wherein we dismissed Mother's appeal for lack of jurisdiction. *In re C.C.*, 2d Dist. Montgomery No. 26606, 2015-Ohio-3048. We also found that the trial court's amended decision was a nullity because Mother's appeal was pending before us at the time that the trial court issued the decision. *Id.*

{¶ 3} On July 21, 2015, Mother filed another notice of appeal from the trial court's March 2, 2015, decision adopting the magistrate's decision. As we already held, however, the March 2, 2015, decision was not a final appealable order. Accordingly, we once again dismissed Mother's appeal for lack of jurisdiction in a decision and judgment entry issued on September 11, 2015. *In re C.C.*, 2d Dist. Montgomery No. 26771

(September 11, 2015). Shortly thereafter on September 15, 2015, the trial court issued its "Amended Decision and Judgment Concerning Objections to the Decision of the Magistrate." Mother filed a timely notice of appeal of the amended decision with this Court on October 14, 2015.

{¶ 4} The incident which forms the basis for the instant appeal occurred on April 11, 2013, when Officer Brian Douglas of the Trotwood Police Department responded to Mother's residence after she reported an unruly runaway juvenile. Specifically, Mother called the police to report that her daughter, C.C., had left without permission and was refusing to come home. Mother informed Officer Douglas that she believed that C.C. was with her biological father, A.C. (hereinafter "Father"). Officer Douglas testified that he contacted Father who stated that C.C. was in his care. Officer Douglas and Father arranged to meet at the Trotwood Police Station in order to return C.C. into Mother's care and also in order to address why the child initially ran away.

{¶ 5} Once at the police station, Mother demanded that C.C. be returned to her. Officer Douglas, however, was concerned because C.C. stated that she was scared of Mother and the punishment that would occur once they got home. Officer Douglas noted that when C.C. was confronted with having to return home with Mother, she became visibly upset and started crying. Officer Douglas described C.C. as "delirious." Officer Douglas testified that he also interviewed some of C.C.'s family members who arrived at the police station. Based on his observations, Officer Douglas contacted MCCS and asked them to implement a safety plan to keep C.C. from being sent back with Mother. MCCS informed Officer Douglas that it was not going to send a caseworker but asked him to send C.C. home with another family member besides Mother if possible. After

some discussion, C.C. was placed with her godfather for the night.

{¶ 6} A short time later, Sergeant Fred Beck from the Trotwood Police Department performed a follow up investigation into allegations of domestic violence between Mother and C.C. Sgt. Beck testified that he located C.C. at her uncle's residence in Germantown, Ohio. Sgt. Beck testified that he then interviewed C.C. and her maternal grandmother, F.P., at the Trotwood Police Station. Sgt. Beck testified that C.C. appeared scared and upset and stated that she did not want to go back to Mother's house. After taking statements from C.C. and F.P., Sgt. Beck determined that he had probable cause to arrest Mother for domestic violence and child endangering, charges which were later dismissed without prejudice because the State's witnesses failed to appear after being subpoenaed. Sgt. Beck contacted MCCS and directed them to create a safety plan for C.C. After deciding that C.C. would be temporarily placed with Father, Sgt. Beck traveled to Mother's residence in order to retrieve some of C.C.'s belongings. Sgt. Beck testified that Mother appeared to be very angry, and she refused to provide him with any of C.C.'s belongings. Sgt. Beck testified that based upon his observations, he believed that C.C. was in danger from Mother.

{¶ 7} Shortly thereafter, MCCS filed a complaint alleging that C.C. was an abused and dependent child. The first part of an adjudication hearing was held on September 17, 2013, after which interim temporary custody of C.C. was awarded to F.P. During the hearing, F.P. testified that Mother hit C.C. in order to discipline the child. F.P. also testified that Mother would often yell and scream excessively when she became upset. F.P described Mother as anxious and intimidating. F.P. testified that C.C. had begun to appear afraid of Mother. F.P. further testified that Mother's threatening behavior was

mainly directed at C.C., and the child genuinely feared for her safety.

{¶ 8} The second part of the adjudication hearing was held on November 13, 2013. MCCS caseworker Sonia Dejesus-Jordan testified that she was assigned to investigate C.C.'s abuse claims. Jordan testified that she interviewed C.C. at her school, and she stated that she was afraid for her life if she was returned to Mother's care. Jordan testified that C.C. told her that Mother would often pull her hair as a form of discipline. C.C. also reported to Jordan that as punishment, Mother slapped her, dragged her around, made her sleep in a bed with no sheets or pillows, and hit her with a belt. C.C. was scared that "Mother was going to come and get her." Jordan described C.C. as very articulate and believable. Jordan testified that Mother was reluctant to speak with her and participate in the investigation. Jordan also interviewed Father and F.P. as part of her investigation. Jordan testified that she was able to substantiate the allegations of abuse through her investigation.

{¶ 9} Mother testified at the hearing and denied all of the abuse allegations. Mother testified that she believed her parenting of C.C. was completely appropriate at all times. Mother also testified that depending on the offense, her manner of discipline could include verbal, physical, or a combination of both. Mother claimed that C.C. was lying regarding her allegations of abuse. Mother, however, acknowledged that during a conference with one of C.C.'s teachers, she did not approve of the manner in which her daughter was speaking to the teacher. As a result, Mother testified that she hit C.C. in the head with a folder in the presence of the teacher. Mother testified that she refused to raise a disrespectful daughter. Mother denied being under any stress at the time C.C. ran away in April of 2013, and testified that she was in a "kind of happy, fulfilled place."

{¶ 10} On December 13, 2013, the magistrate adjudicated C.C. abused and dependent. On the same day, Mother filed a motion to set aside the magistrate's decision. The trial court denied Mother's motion in an entry issued on January 14, 2014. On January 22, 2014, Mother filed a motion to reconsider the trial court's denial of her motion to set aside which the trial court subsequently denied on January 28, 2014.

{¶ 11} Also on January 28, 2014, a dispositional hearing was held before the magistrate, after which C.C.'s guardian ad litem (GAL) filed a report in which he recommended that temporary custody be awarded to F.P. Thereafter, on February 5, 2014, the magistrate awarded temporary custody of C.C. to F.P., with protective supervision granted to MCCS. Mother filed her initial objections to the magistrate's decision on February 19, 2014. On August 12, 2014, Mother filed supplemental objections to the magistrate's decision. With the permission of the trial court, Mother supplemented her objections a second time on October 7, 2014. MCCS filed its response to Mother's supplemental objections on November 5, 2014.

{¶ 12} As previously discussed, the trial court issued a judgment overruling Mother's objections and adopting the decision of the magistrate on March 2, 2015. On September 15, 2015, the trial court issued an amended judgment adopting the magistrate's decision.

{¶ 13} It is from this judgment that Mother now appeals.

{¶ 14} Mother's first assignment of error is as follows:

{¶ 15} "THE MAGISTRATE COMMITTED REVERSIBLE ERROR WHEN SHE ADMITTED HEARSAY STATEMENTS ALLEGEDLY MADE BY [THE] MINOR CHILD."

{¶ 16} In her first assignment, Mother contends that the magistrate erred by relying

on inadmissible hearsay when she adjudicated C.C. abused and dependent and awarded temporary custody to F.P.   Specifically, Mother argues that "the only basis for the entire finding of abuse and dependency was the allegations made by child that were relayed to family members and investigators."   Mother also alleges that the magistrate failed to conduct an in camera interview of the child in order to ascertain her testimony regarding the abuse that occurred.

**{¶ 17}** When a juvenile court rules on objections to a magistrate's decision, "the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." Juv.R. 40(D)(4)(d).   R.C. 2151.23(F)(1) provides that the "juvenile court shall exercise its jurisdiction in child custody matters in accordance" with section R.C. 3109.04, which authorizes domestic relations courts to allocate parental rights and responsibilities for the care of minor children.   We review the juvenile court's decision for an abuse of discretion. *In re A.K.,* 2d Dist. Champaign No. 09–CA–32, 2010–Ohio–2913, ¶ 22.

**{¶ 18}** There must be strict adherence to the rules of evidence at the adjudicatory stage and hearsay is not admissible. *In re Baby Girl Baxter*, 17 Ohio St.3d 229, 233, 479 N.E.2d 257 (1985).   A trial court, however, possesses broad discretion with respect to the admission of evidence. *State v. Maurer*, 15 Ohio St.3d 239, 265, 473 N.E.2d 768 (1984).   A trial court's determination on an evidentiary issue will only be overturned if it evinces an abuse of discretion, signifying an unreasonable, arbitrary, or unconscionable attitude. *O'Brien v. Angley*, 63 Ohio St.2d 159, 163, 407 N.E.2d 490 (1980).

**{¶ 19}** " 'Abuse of discretion' has been defined as an attitude that is unreasonable,

arbitrary or unconscionable. (Internal citation omitted). It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary. A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue *de novo,* would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *AAAA Enterprises, Inc. v. River Place Community Redevelopment,* 50 Ohio St.3d 157, 161, 553 N .E.2d 597 (1990).

{¶ 20} The purported hearsay statements which Mother challenges on appeal include: (1) statements by C.C. to the maternal grandmother, F.P., that Mother physically and mentally abused her ; (2) statements made by the C.C. to Officer Douglas regarding the physical abuse she suffered at the hands of Mother; (3) testimony by MCCS intake caseworker Jordan that C.C. told her that she was "fearful of her life if she had to return to Mother's care" and that Mother physically abused her; and 4) the testimony of P.H. that C.C. informed her that "I want to leave my mom" and "my mom scares me."

{¶ 21} Mother argues that the following offered by F.P. was clearly hearsay and should have been stricken from the record:

> The State:   So, you were describing – well, let's move on.   So, as a result of the yelling and screaming that [Mother] did to [C.C.], did you ever notice a negative impact on C.C.?
>
> F.P: [C.C.] start to, in recent months, showing, yeah, she was afraid. [C.C.] was talking to me about things that she felt – she felt she was on constant punishment.   She felt they were too severe.

Defense Counsel: Objection, Your Honor.   Hearsay.

The State: May I respond?   An existing emotional condition, how she felt.

The Court: Overruled.

The State: And so how was she explaining how she felt?

F.P.: Am I –

The Court: What did she – yeah, you can answer.   What did she say to you how she felt?

F.P.: She would tell me things that happened between her and her mom.   She said her mom would have times when she would wake her up and be – be upset about something, something she did.   She may be on punishment.   Mom may wake her up at like [sic] a crazy woman at three o' clock in the morning and be still fussing about it.   She claimed that her mother did push her.   She claimed her mom had punched her.   She claimed that her mom had just started getting worse.

***

{¶ 22} C.C.'s statements to F.P. that she was scared and was afraid of Mother were relevant to her state of mind when she left Mother's residence and sought help from Father and the police.   These statements were properly admitted as evidence under Evid.R. 803(3), which permits hearsay evidence of a declarant's "then existing state of mind, emotion, sensation * * * (such as intent, plan, motive, design, mental feeling [or] pain)."   To be sure, "testimony of state-of-mind witnesses, that the victim was fearful and apprehensive [is] not inadmissible hearsay and [is] properly admitted." *State v.*

*O'Neal*, 87 Ohio St.3d 402, 411, 721 N.E.2d 73 (2000), citing *State v. Apanovitch*, 33 Ohio St.3d 19, 22, 514 N.E.2d 394 (1987).

{¶ 23} Thus, C.C.'s statements to Officer Douglas, Jordan, and P.H. that she was scared and was afraid of Mother were properly admitted as evidence under Evid.R. 803(3). To the extent that C.C. was describing her fearful state-of-mind caused by Mother's conduct, the magistrate did not err in allowing the witnesses to testify regarding those statements made to them by C.C. However, we note that to the extent the witnesses, namely F.P., Officer Douglas, and Jordan, were allowed to testify regarding C.C.'s statements about the physical abuse perpetrated by Mother, their testimony constituted inadmissible hearsay.

{¶ 24} However, we find beyond a reasonable doubt that any improperly admitted hearsay testimony did not contribute to the adjudication of abuse and dependency, and therefore, was harmless error. Significantly, the record establishes that upon a motion from Mother, the magistrate conducted an in camera interview of C.C. immediately prior to the hearing held on November 13, 2013. Thus, the magistrate was able to directly question C.C. regarding her allegations of abuse against Mother. Mother, however, did not request that the interview of C.C. be recorded and placed on the record. Thus, any error in interviewing C.C. off the record is waived. *In re Reed*, 2d Dist. Greene No. 95 CA 56, 1995 WL 765595, *4 (December 20, 1995).

{¶ 25} We also note that after performing their respective investigations into C.C.'s allegations against Mother, Jordan and Ashley Stahl, C.C.'s MCCS caseworkers, both testified that they were able to substantiate the abuse claims. Additionally, Sgt. Beck testified that after concluding his investigation, he believed that probable cause existed

to arrest Mother and charge her with domestic abuse and child endangerment. F.P. testified that she was concerned with Mother's mental health and that C.C. appeared to be genuinely afraid of her. Moreover, the GAL's report, which Mother did not challenge on hearsay grounds, recommended that C.C. should be placed in the legal custody of F.P. because of Mother's repeated willful failure to work through her case plan objectives.

{¶ 26} Lastly, we note that this case was tried directly to the magistrate, not a jury, and we presume that the magistrate considered only relevant, material, and competent evidence unless it affirmatively appears to the contrary. *In re J.S.*, 2d Dist. Montgomery No. 22063, 2007-Ohio-4551, ¶ 46. Although we find that the trial court committed error when it allowed F.P., Jordan, and Officer Douglas to testify to prior hearsay statements by C.C., that error was harmless beyond a reasonable doubt. Accordingly, we conclude that MCCS adduced substantial and credible evidence to support the trial court's decision to adopt the magistrate's decision adjudicating C.C. abused and dependent and awarding temporary custody to F.P.

{¶ 27} Mother's first assignment of error is overruled.

{¶ 28} Mother's second and final assignment of error is as follows:

{¶ 29} "THE FINDING OF ABUSE AND DEPENDENCY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶ 30} In her final assignment, Mother argues that the trial court's decision to adopt the magistrate's decision adjudicating C.C. abused and dependent was against the manifest weight of the evidence.

{¶ 31} A juvenile court has broad discretion in the disposition of an abused, neglected, or dependent child. *See* R.C. 2151.353(A) and Juv. R. 29(D). The

dispositional options include, among other things, granting a children-services agency temporary custody, committing the child to the permanent custody of a children-services agency, or awarding legal custody to a relative or any other person. R.C. 2151.353(A). "In choosing among the alternatives, the best interest of the child is the court's primary consideration." *In re L.C.,* 2d Dist. Clark No. 2010 CA 90, 2011–Ohio–2066, ¶ 13.

{¶ 32} Where an award of custody is supported by substantial competent, credible evidence in the record, that award will not be reversed as being against the manifest weight of the evidence. *Davis v. Flickinger,* 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997).

{¶ 33} In the instant case, the record establishes that the trial court's decision finding C.C. to be abused and dependent was not against the manifest weight of the evidence. First of all, every witness, with the exception of Mother, testified that C.C. was afraid of Mother and did not want to live with her. Officer Douglas testified that when he explained that she might have to go home with Mother on the night she went to Father's house, C.C. got very upset, started crying, and became "delirious." F.P. testified that she believed that C.C. would not fabricate stories regarding the mental and physical abuse she suffered from Mother. The evidence adduced by the State established that C.C. lived in a constant state of fear of Mother. Mother testified herself that she "smacked" C.C. in the head with a folder at a parent/teacher conference because she believed the child was being disrespectful. Sgt. Beck testified that based upon his own investigation, he believed he had probable cause to arrest Mother and charge her with domestic abuse and child endangerment. Sgt. Beck testified that the charges were

dismissed without prejudice because subpoenaed witnesses "did not show." The record also establishes that MCCS substantiated both emotional maltreatment and physical abuse of C.C. by Mother.

**{¶ 34}** In order to assist in reunification with C.C., MCCS established a case plan for Mother to follow, to wit: 1) obtain and maintain housing and income; 2) participate in mental health treatment, specifically individual and family counseling; 3) complete the Parent/Teen Conflict Program; 4) complete a batterer's intervention program; 5) complete a parenting/psychological assessment; and 6) follow all recommendations.

**{¶ 35}** Stahl testified that Mother did not sign her case plan and was unwilling to work with MCCS at the case plan meeting. Mother signed a limited release which only allowed her counselor to disclose whether she was attending counseling, not what was being discussed during the sessions. Stahl testified that difficulty completing the case plan objectives was compounded by the fact that MCCS did not have any contact with Mother since November of 2013. Stahl testified that as a result of Mother's noncompliance, MCCS simply does not have any information to establish any progress with her case plan objectives. Accordingly, the record establishes that in addition to her substantiated mental and physical abuse of C.C, Mother's own lack of cooperation and communication with MCCS prevented her from utilizing services which would have assisted her in reunification with her daughter.

**{¶ 36}** Finally, the GAL recommended that legal custody of C.C. be awarded to F.P. In fact, the GAL recommended an award of permanent custody of C.C. to F.P. in light of the discoveries he made during his investigation of the case. The GAL also reiterated in his testimony that Mother has exhibited a complete unwillingness to comply

with her case plan objectives.

**{¶ 37}** Therefore, based upon the evidence presented in this case, we conclude that the trial court's decision to adopt the magistrate's decision adjudicating C.C. abused and dependent was not against the manifest weight of the evidence. In our view, the trial court had before it ample evidence which supported an award of temporary custody to F.P. with protective supervision to MCCS.

**{¶ 38}** Mother's final assignment of error is overruled.

**{¶ 39}** Both of Mother's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

FAIN, J. and FROELICH, J., concur.

Copies mailed to:

Ann M. Graber
Daniel F. Getty
Hon. Nick Kuntz