[Cite as *State v. Cooperstein*, 2019-Ohio-4724.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2018-09-117 |
| Appellee, | : | O P I N I O N<br>11/18/2019 |
| | : | |
| - vs - | : | |
| | : | |
| ERIN COOPERSTEIN, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 17-N000913


David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for appellee

Tyrone P. Borger, 62 Remick Boulevard, Springboro, Ohio 45066, for appellant



**M. POWELL, J.**

{¶ 1}   Appellant, Erin Cooperstein, appeals her conviction in the Warren County Court of Common Pleas, Juvenile Division, for child endangering.

{¶ 2}   As of September 2017, appellant was the stepmother of C.C. and was living with C.C.'s father, Joel Cooperstein (Father), their two young children, and J.B., her ten-

year-old daughter from a previous relationship. C.C.'s mother (Mother) and Father exercise equal parenting time of C.C. At the time of the incident subject of this appeal, C.C. was seven years old.

{¶ 3} On the morning of Saturday, September 23, 2017, Mother dropped off C.C. at appellant's home for Father's parenting time. Father worked long hours at a car dealership and was already at work. Only appellant and J.B. were home when C.C. arrived. J.B. was upstairs getting dressed. Appellant called C.C. into the kitchen. When C.C. came into the kitchen, appellant took a long blue lighter, turned on the flame, and held it under C.C.'s right hand. When C.C. pulled her hand away, appellant told her to put her hand back over the lighter and to slowly count to five Mississippi. C.C. did as she was told while appellant held her wrist. C.C. suffered a second-degree burn to the palm of her hand. Appellant told C.C. not to tell anyone. C.C. believed that if she told anyone, appellant would "probably do it again." C.C. did not know why appellant held a lighter under her hand as she was not being bad and had not been in trouble at school. Appellant provided no explanation for her actions.

{¶ 4} Late that evening, C.C. and J.B. were driven to the home of appellant's father and stepmother (Mr. and Mrs. Behymer) to spend the night. When Mr. Behymer saw C.C.'s hand, he asked his wife to look at it. Mrs. Behymer observed a very large blister on C.C.'s palm, almost covering "her whole hand." C.C. told her it was a dog bite. Mrs. Behymer believed it was a burn.

{¶ 5} The next morning, Sunday, September 24, 2017, C.C. could not open her right hand. Mrs. Behymer helped C.C. treat the injury, giving her a sterilized needle and instructing her how to pop the blister. When C.C. did so, a significant amount of pus came out. Mrs. Behymer put medicine on C.C.'s hand and wrapped it in gauze. Later that day, C.C. went to King's Island with her paternal grandparents. Father met them there. When

Father saw C.C.'s wrapped hand, he asked what happened. C.C. told him it was a dog bite. The paternal grandfather took C.C. to a first aid station. When asked about her injury, C.C. told the employees it was a dog bite. A photograph taken at King's Island shows a large blister on C.C.'s right palm. Later that evening, C.C. returned to appellant's home where she took a shower. During the shower, appellant scrubbed C.C.'s hand with a washcloth "and popped the thing [which] really hurt."

{¶ 6} On Monday, September 25, 2017, C.C. went to school. C.C's teacher noticed the wrapped hand and inquired about it. C.C. told her it was a dog bite from one of Mother's dogs. The teacher was later able to see a portion of the injury, noticed it was blistered, and believed it looked like a burn. The teacher was unable to bring C.C. to the school nurse or counselor because appellant picked up C.C. early from school, allegedly for a doctor's appointment. However, C.C. did not have a doctor's appointment and appellant did not take C.C. to a doctor. Instead, appellant bought some medicine and upon returning home, treated and wrapped C.C.'s hand.

{¶ 7} C.C. returned to school the next day. After C.C. complained about her hand and was having trouble holding a pencil, her teacher took her to the school counselor. C.C. looked sad and scared and had been crying. C.C. initially told the counselor she was bit by a dog at Mother's house the previous Thursday. After the counselor was able to see a portion of the injury, C.C. told her she had blisters and explained she had burned her hand by touching a stove. After the counselor questioned C.C.'s statement and told her she needed to be honest, C.C. began crying and told the counselor what had really happened to her hand. C.C. was "very adamant" that the counselor "not share anything with anybody" for fear appellant would find out. The counselor took C.C. to the school nurse who cleaned C.C.'s hand gently. There was a red circular burn on the palm of the hand and the skin was loose and moist. C.C. was in pain.

{¶ 8} The counselor then reported the matter to the police and children's services. The police and children's services subsequently arrived at the school to talk to C.C. Springboro Police Officer William Clevenger spoke to C.C. who first told him she had burned her hand on a stove. C.C. next told him about the blister she had popped. C.C. then told the officer "she had something else she wanted to tell [him]" and told him what had really happened to her hand. Upon being called by the school and informed of the injury, Mother picked up C.C. at school and took her to Children's Hospital. The following day, Mother took C.C. to Shriner's Hospital where she was examined by Dr. Petra Warner, a burn physician.

{¶ 9} Springboro Police Detective Terry Dunkel interviewed appellant about the incident on three separate occasions. During the first interview, appellant denied burning C.C.'s hand with a lighter and claimed she first saw C.C.'s injury on Sunday night. Appellant could not explain how the injury occurred on her watch, blamed the injury on Mother, and suggested C.C. was lying about the incident. Appellant told the detective that there were behavioral issues with C.C. at school and that she was consequently disciplined at home by having electronics taken away. However, both Mother and C.C.'s teacher confirmed there were no behavioral issues with C.C. at school.

{¶ 10} During the second interview, appellant claimed she did not see C.C.'s injury until Monday. She denied performing a Google search on her cellphone regarding blisters. A cursory search of appellant's immediate Google history on her cellphone revealed no such search. Appellant agreed to give her cellphone to the detective for a more thorough search but asked to keep it over the weekend so that she could obtain a new phone. After appellant turned over her phone the following Monday, a specialist was unable to obtain any search history because the Google account had been turned off.

{¶ 11} During the third interview, appellant again denied burning C.C.'s hand with a

- 4 -

lighter, and blamed the injury on Mother, then on her own mother, even though the latter was hospitalized the weekend of the incident. Once again, appellant could not explain how the injury occurred on her watch. The detective testified that appellant was only concerned about her children during the interviews.

{¶ 12} On November 6, 2017, appellant was charged by complaint in the trial court with one count of child endangering. A jury trial was held on September 10 and 11, 2018. Three days before trial, the state filed a motion in limine, seeking to exclude the testimony of defense expert, Dr. Bob Stinson, pursuant to Evid.R. 702. Dr. Stinson had prepared a report providing an overview of the research regarding false allegations of child abuse by young children and the factors contributing to false allegations. That same day, appellant responded to the state's motion by seeking a continuance of the September 10, 2018 jury trial.

{¶ 13} On September 10, 2018, the trial court granted the state's motion in limine and denied appellant's motion for a continuance. The trial court further denied appellant's request for a special jury instruction related to C.C.'s credibility. The trial court found that such jury instruction was not needed "as the Court will have the opportunity to determine if the child witness is competent to testify and the jury will be instructed on the general credibility of all witnesses."

{¶ 14} At trial, C.C., Mother, C.C.'s teacher, the school counselor, Dr. Warner, Detective Dunkel, and Mrs. Behymer testified on behalf of the state. Appellant's two brothers, Officer Clevenger, Clearcreek Township Police Officer Kevin Knobbe, Father, and J.B. testified on behalf of appellant. Prior to C.C. testifying, the trial court conducted a competency hearing to determine whether the child was competent to testify. At the conclusion of the hearing, the trial court found C.C. competent to testify.

{¶ 15} C.C. testified she did not have a blister on her hand when she was dropped

off at appellant's home on Saturday morning. She further testified that her injury was caused by appellant's use of the lighter, and not by a dog bite or by putting her hand on a stove. C.C. explained that she could not tell Father or Mother about the injury because doing so would ultimately involve appellant. She further stated she lied about the dog bite so that she would not get in trouble with appellant. C.C. explained she told the truth to the counselor because she felt safe with her.

{¶ 16} Dr. Warner testified that C.C. suffered a second-degree burn and that such burns are very painful. Dr. Warner further testified that the injury was not from a dog bite and that it could have been caused by the use of a lighter.

{¶ 17} Mrs. Behymer testified that when she met C.C. two years ago, the child was "bubbly" and always happy. By contrast, C.C. always seemed sad in September 2017. Further, Mrs. Behymer had noticed that appellant treated C.C. differently than her children and was colder to her. Mother testified that when she dropped off C.C. at appellant's home on Saturday, September 23, 2017, the child was very quiet. Mother stated that C.C. was always very quiet and very withdrawn every time she had to go to appellant's home when she knew Father would not be there. Mother stated that C.C. told her about the incident on September 28, 2017. Over defense counsel's objection, the trial court admitted the statement as an excited utterance.

{¶ 18} Officers Clevenger and Knobbe testified that when they each arrived at the school, C.C. was in a room with both her teacher and the counselor. Both officers stated this was concerning. Officer Clevenger felt that the school employees were leading C.C. to give a different explanation other than the dog bite. Officer Knobbe was concerned the school employees might mislead the child or implant ideas into her head. Both C.C.'s teacher and the school counselor denied telling C.C. what to say to the police or children's services. Both testified that upon seeing the police and children's services on the school

premises, C.C. became withdrawn, tense, and anxious.

{¶ 19} J.B. testified she initially thought that C.C. took a shower on Saturday afternoon and that appellant looked at C.C's hand at that time. J.B. then stated, "That's what I thought [but] Mom told me she didn't see it until King's Island." Likewise, J.B. testified she initially thought appellant performed a Google search on her cellphone regarding blisters and burns. However, J.B. was mistaken because following J.B.'s forensic interview, "mom told me that she never searched anything up like that."

{¶ 20} Father testified that when he asked C.C. about her injury on Sunday, she was very hesitant to explain what had happened and told him it was a dog bite. Father further testified that upon returning home from King's Island that evening, whenever he had an opportunity to talk to C.C. about the injury, he was systematically "redirected" by appellant. Father stated he was surprised when appellant treated C.C.'s hand that evening with an ointment specially bought by appellant because appellant "didn't really treat [C.C.] with that type of respect." Father stated he was told by appellant that C.C. lied and had behavioral issues at school. Father testified, however, that C.C. had never lied to him. Further, he later found out that appellant lied about the child's alleged behavioral issues at school.

{¶ 21} On September 11, 2018, the jury found appellant guilty as charged. Appellant was subsequently sentenced to 180 days in jail, with 60 days suspended.

{¶ 22} Appellant now appeals, raising seven assignments of error.[1]

{¶ 23} Assignment of Error No. 1:

{¶ 24} THE ACTS AND OMISSIONS OF TRIAL COUNSEL DEPRIVED THE DEFENDANT-APPELLANT OF A FAIR AND RELIABLE RESULT AT TRIAL.

---

1. We note that appellant's brief fails to raise specific assignments of error as required by App.R. 16(A)(3) and Loc.R. 11(B) and instead sets forth propositions of law in violation of Loc.R. 11(B)(3). In appeals to this court, "[a]n assignment of error shall not be set forth as a proposition of law[.] Such a statement is wholly inappropriate at this appellate level." Loc.R. 11(B)(3). Nonetheless, we will treat appellant's propositions of law as assignments of error.

{¶ 25} Appellant argues that trial counsel was ineffective because he (1) failed to extensively cross-examine Dr. Warner, the state's expert, and failed to call an expert witness to contradict Dr. Warner's testimony, (2) failed to cross-examine the school counselor and Mrs. Behymer and otherwise only minimally cross-examined Mother and a police officer, and (3) failed to move for acquittal pursuant to Crim.R. 29(A).

{¶ 26} To establish ineffective assistance of counsel, appellant must show (1) deficient performance by counsel, that is, performance falling below an objective standard of reasonable representation, and (2) prejudice, that is, a reasonable probability that but for counsel's errors, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052 (1984); *State v. Mundt*, 115 Ohio St.3d 22, 2007-Ohio-4836, ¶ 62. The failure to satisfy either prong of the *Strickland* test is fatal to an ineffective assistance of counsel claim. *State v. Petit*, 12th Dist. Madison No. CA2016-01-005, 2017-Ohio-633, ¶ 39.

{¶ 27} "As an initial matter, the failure to call an expert and instead rely on cross-examination does not constitute ineffective assistance of counsel." *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 66. "[I]t is generally a legitimate trial strategy for defense counsel not to present expert testimony and instead rely upon cross-examination of a state's expert to rebut evidence of a crime." *State v. Green*, 12th Dist. Warren No. CA2017-11-161, 2018-Ohio-3991, ¶ 43. In many criminal cases, such a decision by trial counsel is unquestionably tactical because such an expert might uncover evidence that further inculpates the defendant. *Id.* Further, even if the wisdom of such an approach is debatable, "debatable trial tactics" do not constitute ineffective assistance of counsel. *Id.*, citing *State v. Clayton*, 62 Ohio St.2d 45, 49 (1980).

{¶ 28} Appellant's argument that a defense expert was necessary to challenge Dr. Warner's testimony that C.C. suffered a second-degree burn to the palm of her hand, and

- 8 -

to offer an alternative explanation for the injury is purely speculative. Dr. Warner ruled out a dog bite as the cause of C.C.'s injury and testified that C.C.'s burn was caused when "a hot object or something hot touched that area." While Dr. Warner testified the injury could have been caused by the use of a lighter, she did not categorically rule out it could have been caused by a stove. Appellant fails to identify the expert witness who should have been called or what such expert would have said. *Hunter* at ¶ 66. Appellant further fails to show that an expert could or would have offered an opinion that was different than Dr. Warner's opinion. We note that trial counsel only asked one question on cross-examination. However, the manner trial counsel chooses to cross-examine the state's witnesses is a matter of trial strategy, and in fact, limited or no cross-examination of a witness may be the best strategy. *Petit*, 2017-Ohio-633 at ¶ 49. We find nothing in the record to suggest that trial counsel's failure to call an expert and extensively cross-examine Dr. Warner was anything other than a reasonable, tactical decision.

{¶ 29} Regarding trial counsel's minimal cross-examination of Mother and a police officer who was dispatched to appellant's home and took photographs of a lighter, we reiterate that the manner trial counsel chooses to cross-examine the state's witnesses is a matter of trial strategy, and in fact, limited or no cross-examination of a witness may be the best strategy. *Id.* "The extent and scope of cross-examination clearly fall within the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel." *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, ¶ 146. Appellant fails to show how she was prejudiced by trial counsel's cross-examination of Mother and the police officer. Had trial counsel asked more questions, there is no indication that the answers would have been helpful to appellant's defense, or that further cross-examination would have resulted in a not-guilty verdict. Accordingly, appellant did not receive ineffective assistance of counsel during trial counsel's cross-examination of Mother and the police

officer.

{¶ 30} Regarding trial counsel's failure to cross-examine the school counselor and Mrs. Behymer, "'trial counsel need not cross-examine every witness * * *. The strategic decision not to cross-examine witnesses is firmly committed to trial counsel's judgment[.]'" *State v. Campbell*, 90 Ohio St.3d 320, 339 (2000), quoting *State v. Otte*, 74 Ohio St.3d 555, 565 (1996). Appellant fails to identify the testimony of the foregoing witnesses upon which cross-examination should have focused and how she was prejudiced by the lack of cross-examination. Accordingly, appellant did not receive ineffective assistance of counsel when trial counsel failed to cross-examine the school counselor and Mrs. Behymer. *Petit*, 2017-Ohio-633 at ¶ 39.

{¶ 31} Failure to move for acquittal under Crim.R. 29 at the close of the state's case-in-chief is not, per se, ineffective assistance of counsel. *State v. McMurray*, 12th Dist. Preble No. CA2014-08-008, 2015-Ohio-2827, ¶ 38. While it is customary for defense counsel to make a Crim.R. 29 motion to test the sufficiency of the state's evidence, the failure to make such a motion does not mean that trial counsel's performance fell below a reasonable standard of representation *Id.* As discussed below in our resolution of appellant's fifth assignment of error, there was sufficient evidence presented at trial to support appellant's conviction for child endangering. Thus, any Crim.R. 29 motion made by trial counsel would have been futile *Id.* Accordingly, appellant's trial counsel did not provide ineffective assistance by failing to move for acquittal under Crim.R. 29.

{¶ 32} Appellant's first assignment of error is overruled.

{¶ 33} Assignment of Error No. 2:

{¶ 34} THE TRIAL COURT ERRED WHEN IT RULED THAT THE MINOR CHILD WAS COMPETENT TO TESTIFY.

{¶ 35} Appellant argues that C.C. was incompetent to testify because she indicated

- 10 -

"a concerning understanding of the truth and falsity" and a "lack of appreciation of her responsibility to tell the truth" during her competency hearing, and "explicitly stated an instance when it is okay to lie." Appellant further argues the voir dire examination of the child was inadequate because she was only asked one question regarding her ability to receive accurate impressions of fact.

{¶ 36} Pursuant to Evid.R. 601, "[e]very person is competent to be a witness except * * * children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly." It is the duty of the trial court to conduct an examination of a child under ten years old to determine the child's competency to testify. *State v. King*, 12th Dist. Warren No. CA2018-04-047, 2019-Ohio-833, ¶ 31.

{¶ 37} In determining whether a child under ten years old is competent to testify, the trial must take into consideration "(1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify, (2) the child's ability to recollect those impressions or observations, (3) the child's ability to communicate what was observed, (4) the child's understanding of truth and falsity, and (5) the child's appreciation of his or her responsibility to be truthful." *State v. Frazier*, 61 Ohio St.3d 247, 251 (1991). "A court conducting a voir dire to determine competency is not chained to a ritualistic formula to ask specific questions. However, it must satisfy itself of the elements enumerated in *Frazier*." *State v. Swartsell*, 12th Dist. Butler No. CA2002-06-151, 2003-Ohio-4450, ¶ 13.

{¶ 38} A child witness under ten years old may be competent to testify even though the child is unable to recollect all of the facts of a given situation. *State v. Fry*, 125 Ohio St.3d 163, 2010-Ohio-1017, ¶ 76. The child's answers must demonstrate that the child "can perceive and recall generally and understands the concept of truthfulness." *Id.* A trial

court's finding that a child under ten years old is competent to testify will not be disturbed, absent an abuse of discretion. *King*, 2019-Ohio-833 at ¶ 32. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 130.

{¶ 39} Upon reviewing the voir dire examination of C.C. as a whole, we find no error in the manner the trial court questioned C.C. and no abuse of discretion in its finding that C.C. was competent to testify. C.C. was eight years old at the time of the competency hearing. Upon questioning, she stated her full name, her age and date of birth, where she went to school, the town where her school was, her grade, the name of her current teacher and the name of her teacher the year before, and her favorite and least favorite subjects. She further stated her living arrangements, the identities of the people she lived with, the names, age, and birthdays of her siblings, the number and names of her pets, and what she did over the summer.

{¶ 40} Her answers further showed she knew the difference between truth and falsity, understood the importance of telling the truth, and understood she should tell the truth. Specifically, C.C. stated that it was wrong to tell a lie and good to tell the truth, one could get in trouble for telling a lie and "nobody wants you to tell a lie because that's just bad to tell a lie," and one "won't get in trouble" for telling the truth. She further stated it was bad to break a promise, and promised to tell the truth and not lie when it came time to talk about what had happened to her.

{¶ 41} Appellant focuses on one isolated answer of C.C. during which she stated that sometimes lies were good so as to "keep yourself like safe."[2] Notwithstanding this answer,

---

2. C.C.'s answer about good lies was elucidated during Father's redirect examination. Father explained the term referred to a "white lie" and that he was the one who introduced the concept to C.C. On cross-examination, C.C. stated she was told about good lies by Father and that it is never good to lie. The record plainly shows that C.C. did not understand and was unable to explain what a "good lie" was, both during the competency hearing and on cross-examination.

C.C. plainly stated that lies were bad and the truth was good. A trial court's decision that a child under ten years old is competent to testify must be approached by a reviewing court with great deference because the trial judge is in the best position to determine child witness credibility, having the opportunity to observe the child's appearance, manner of responding to questions, general demeanor, and ability to relate the facts accurately and truthfully. *In re M.G.*, 12th Dist. Butler No. CA2015-06-126, 2016-Ohio-2677, ¶ 22. The trial court, which saw C.C. and listened to her testify, was in a far better position to determine her competency than this court, which only reads her testimony from the record. *State v. Clark*, 71 Ohio St.3d 466, 470 (1994).

{¶ 42} The trial court, therefore, did not abuse its discretion in finding that C.C. was competent to testify. Appellant's second assignment of error is overruled.

{¶ 43} Assignment of Error No. 3:

{¶ 44} THE TRIAL COURT ERRED WHEN IT DENIED THE DEFENSE'S EXPERT WITNESS ON THE EVE OF TRIAL.

{¶ 45} Dr. Stinson has a doctorate in psychology, a juris doctorate, and a Bachelor of Science in psychology. As stated above, Dr. Stinson had prepared a report providing an overview of the research regarding false allegations of child abuse by young children and the factors contributing to false allegations. Such factors include youth, passage of time, exposure to false information, suggestibility, reinforcement, biased interviewers, and pressure from adults. The report also listed several reasons that could underlie fabricated allegations. Dr. Stinson concluded that "[b]ased on knowledge derived from my education, training, and experience; based on my review of the above referenced case records; and offered to a reasonable degree of psychological certainty, it is my opinion that there are a number of factors present in this case that could have contributed to a false allegation."

{¶ 46} Three days before trial, the state filed a motion in limine to exclude Dr.

Stinson's testimony pursuant to Evid.R. 702. The trial court granted the state's motion on the basis of Evid.R. 702(A), as follows:

> [T]he essential question before this Court is whether evidence regarding research that exists of false allegations of child abuse by children of tender years, the factors contributing to such false allegations, and an application of this research to the facts of this case, is of such a nature that a jury is not competent to determine the disputed facts without the benefit of an expert witness. Stated a different way, if these issues are within the common knowledge of a jury, then Dr. Stinson's expert opinion is not required.
>
> The Court finds that a reasonable person sitting as a juror who will have the opportunity to listen to the victim's multiple versions of how she suffered her injury, subject to cross examination, is well within their "ken of the jury" as it was stated in State v. Buell (1986), 22 Ohio St.3d 124, to follow the evidence and judge the credibility of all the witnesses without the need of having an expert opinion to guide them. Jurors can rely on their common sense and life experiences to deduce the facts which might influence a child to provide either a true or false narrative.

{¶ 47} Appellant now argues the trial court erred when it excluded the testimony of Dr. Stinson. Appellant asserts that Dr. Stinson's testimony would have assisted the jury in assessing C.C.'s credibility because the factors contributing to false allegations of child abuse listed in Dr. Stinson's report are not obvious to the lay juror.

{¶ 48} At this juncture, we note that a motion in limine, such as the state's motion to exclude Dr. Stinson's testimony, is a "tentative, interlocutory, precautionary ruling by the trial court reflecting its anticipatory treatment of the evidentiary issue." *State v. Palmer*, 12th Dist. Butler Nos. CA2013-12-243 and CA2014-01-014, 2014-Ohio-5491, ¶ 20; *State v. Grubb*, 28 Ohio St.3d 199, 201-202 (1986). A trial court's ruling on a motion in limine does not preserve the record on appeal. *State v. Maurer*, 15 Ohio St.3d 239, 259 (1984), fn. 14. Instead, any claimed error regarding a trial court's decision on a motion in limine must be "preserved at trial by an objection, proffer, or ruling on the record when the issue is actually reached and the context is developed at trial." *Id.*; *Palmer* at ¶ 20. Failure to object to the

admissibility of the evidence at trial waives any error except plain error. *Maurer* at 260, fn. 15.

{¶ 49} Because appellant neither objected to the trial court's decision at trial nor proffered what Dr. Stinson would have stated, she waived any error except plain error. *See* Crim.R. 52(B). An error does not rise to the level of a plain error unless, but for the error, the outcome of the trial would have been different. *Palmer* at ¶ 21. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Landrum*, 53 Ohio St.3d 107, 111 (1990).

{¶ 50} Evid.R. 702 provides that a witness may testify as an expert if (1) the witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons; (2) the witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony; and (3) the witness' testimony is based on reliable scientific, technical, or other specialized information.

{¶ 51} Thus, Evid.R. 702 permits the use of testimony of an expert "if the testimony will aid the trier of fact in understanding the evidence or in determining a fact in issue." *State v. Boston*, 46 Ohio St.3d 108, 118 (1989). The testimony offered must provide information to the factfinder which is "sufficiently beyond common experience." *State v. Buell*, 22 Ohio St.3d 124, 131 (1986).

{¶ 52} We find no error, let alone plain error, in the trial court's exclusion of Dr. Stinson's testimony. Contrary to appellant's assertion, the factors identified in Dr. Stinson's report are not sufficiently beyond the trier of fact's common knowledge or experience, but rather, are matters of common sense and within the life experience of jurors. Moreover, where a party seeks to admit expert testimony regarding the credibility of a witness, there

are several "alternative devices through which a defendant can accomplish the same ends," including conducting rigorous cross-examination, pointing out inconsistencies or discrepancies in the testimony, alerting jurors to factors that may affect a witness' credibility, and ensuring appropriate instructions are given to the jury. *See State v. Vore*, 12th Dist. Warren No. CA2011-08-093, 2012-Ohio-2431, ¶ 54, citing *Buell* at 132-133.

{¶ 53} The record shows that C.C., her teacher, and Mother were cross-examined pursuant to Evid.R. 611(B), during which time trial counsel was able to point out inconsistences or discrepancies in C.C.'s testimony to the jury. In addition, trial counsel's direct examination of Officers Clevenger and Knobbe and his closing arguments provided counsel with the opportunity to raise some of the factors listed in Dr. Stinson's report, thereby alerting jurors to factors affecting C.C.'s credibility. Moreover, the trial court properly instructed the jury regarding witness credibility and the weighing of witness testimony. *See Buell*, 22 Ohio St.3d at 132-133. The jury could, therefore, assess for itself whether any of these commonly understood factors were present and consider them in conjunction with the other evidence in weighing the veracity of C.C.'s claim that appellant burned her hand with a lighter.

{¶ 54} Appellant's third assignment of error is overruled.

{¶ 55} Assignment of Error No. 4:

{¶ 56} THE COURT ERRED AND VIOLATED DUE PROCESS OF LAW WHEN IT DENIED THE DEFENSE'S ABILITY TO BE PREPARED FOR TRIAL BY DENYING THE REQUEST FOR A CONTINUANCE OF TRIAL.

{¶ 57} On September 6, 2018, four days before trial, a pretrial hearing was held during which the state indicated its intention to object to Dr. Stinson's testimony. The trial court directed the state to file a motion to exclude Dr. Stinson's testimony by the next day. On September 7, 2018, the state filed its motion in limine; appellant responded by moving

to continue the September 10, 2018 trial, arguing trial counsel needed time to review and respond to the state's motion in limine. On the morning of the trial, the trial court denied appellant's motion to continue. Appellant now argues that the trial court abused its discretion in denying her motion to continue the trial. Appellant asserts that "due to the discovery dump on the eve of trial" caused by the exclusion of Dr. Stinson's testimony, trial counsel "was not able to adequately prepare for trial [and] needed a continuance in order to further calculate and prepare their case without their expert."

{¶ 58} The decision to grant or deny a motion for continuance is a matter within the sound discretion of the trial court. *State v. Franklin*, 97 Ohio St.3d 1, 2002-Ohio-5304, ¶ 19.

{¶ 59} It is a basic due process right that a defense counsel be afforded the reasonable opportunity to prepare for trial. *State v. Sowders*, 4 Ohio St.3d 143, 144 (1983). However, not every denial of a request for more time violates due process. *Id.* "Even though a trial court's action may affect a defendant's right to assistance of counsel, 'broad discretion must be granted trial courts on matters of continuances' because of the difficulties involved in scheduling trials." *State v. Gilmore*, 12th Dist. Warren No. CA2002-06-049, 2003-Ohio-1445, ¶ 26, quoting *Morris v. Slappy*, 461 U.S. 1, 11, 103 S.Ct. 1610 (1983). "Because of this broad discretion, courts need not presume that the denial of a continuance will interfere with the ability of the accused to receive a fair trial." *Gilmore* at ¶ 26. Accommodation of defense counsel's trial strategy is not an adequate ground for a continuance. *State v. Unger*, 67 Ohio St.2d 65, 68-69 (1981); *State v. Southam*, 3d Dist. Henry No. 7-12-04, 2012-Ohio-5943, ¶ 29.

{¶ 60} We find no abuse of discretion in the trial court's denial of appellant's motion to continue the trial. Appellant is essentially asserting that trial counsel needed additional time to prepare for trial because the exclusion of Dr. Stinson's testimony had significantly

altered counsel's trial strategy. We note that this issue was not raised in the trial court and is thus waived. Moreover, while the exclusion of Dr. Stinson's testimony may have been a surprise to appellant's trial counsel, surprises occur in trials all the time and this change did not unfairly prejudice appellant's right to a fair trial. *See Southam.* A trial counsel should be expected to be prepared to address issues of admissibility of evidence intended to be introduced at trial. Knowing C.C.'s three separate explanations as to how her hand was injured, trial counsel should have anticipated and prepared for a possible exclusion of Dr. Stinson's testimony and consequently formulated an alternative defense and trial strategy.

{¶ 61} Appellant's fourth assignment of error is overruled.

{¶ 62} Assignment of Error No. 5:

{¶ 63} WHEN THE STATE FAILS TO INTRODUCE SUFFICIENT EVIDENCE, AND THERE IS NOT SUBSTANTIAL EVIDENCE UPON WHICH A JURY CAN CONCLUDE THAT ALL ELEMENTS HAVE BEEN PROVEN BEYOND A REASONABLE DOUBT, A RESULTING CONVICTION DEPRIVES A CAPITAL DEFENDANT OF SUBSTANTIVE AND PROCEDURAL DUE PROCESS. U.S. CONST. AMENDS. VI, XIV; OHIO CONST. ART. I, §§ 9, 16. (SIC)

{¶ 64} Appellant argues her conviction for child endangering is not supported by sufficient evidence and is against the manifest weight of the evidence because the state's circumstantial evidence consisted of the testimony of C.C., a child under the age of ten who provided numerous conflicting stories regarding the cause of her injury, the testimony of various state witnesses who did not observe how C.C. sustained her injury and instead merely speculated on the issue, and the testimony of other witnesses who heard conflicting stories about how the burn occurred.

{¶ 65} When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such

evidence, if believed, would support a conviction. *State v. Workman*, 12th Dist. Clermont Nos. CA2016-12-082 and CA2016-12-083, 2017-Ohio-8638, ¶ 20. The relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Watson*, 12th Dist. Warren No. CA2014-08-110, 2015-Ohio-2321, ¶ 22.

{¶ 66} To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Bradbury*, 12th Dist. Butler No. CA2015-06-111, 2016-Ohio-5091, ¶ 17. An appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.* at ¶ 18. A "determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Peyton*, 12th Dist. Butler No. CA2015-06-112, 2017-Ohio-243, ¶ 48.

{¶ 67} Appellant was convicted of child endangering in violation of R.C. 2919.22(B)(1), which prohibits any person from abusing a child under the age of 18 years.

{¶ 68} Upon thoroughly reviewing the record, we find that the jury did not lose its way and create a manifest miscarriage of justice in finding appellant guilty of child endangering. The state presented testimony that C.C. arrived at appellant's home on September 23, 2017, with no injury on her hands. By the end of the day, she had a very large blister on the palm of her right hand. C.C. testified that appellant inflicted the injury by holding the flame of a lighter underneath C.C.'s right hand while making C.C. slowly count to five

Mississippi. This testimony, if believed, was enough to convict appellant of child endangering. Ohio courts have consistently held that a victim's testimony can constitute sufficient evidence for a conviction. *State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, ¶ 177; *Cleveland v. Mincy*, 8th Dist. Cuyahoga No. 106224, 2018-Ohio-3565, ¶ 21.

{¶ 69} Appellant nevertheless challenges her conviction, arguing that the evidence consisted of the testimony of C.C. who told numerous conflicting stories, and the testimony of several witnesses who did not observe how the injury was inflicted and who either speculated or heard conflicting stories on the issue.

{¶ 70} While appellant's conviction is based upon a combination of circumstantial and direct evidence, both evidence inherently have the same probative value, and in some instances, certain facts can only be established by circumstantial evidence. *Petit*, 2017-Ohio-633 at ¶ 18. A conviction based on circumstantial evidence is no less sound than one based on direct evidence. *Id.*

{¶ 71} Trial testimony shows that in trying to explain the cause of her injury, C.C. offered conflicting stories, including that she was bit by a dog or was burned when she put her hand on a stove. Several of the witnesses, including four testifying on behalf of appellant, stated that C.C.'s injury was not caused by a dog bite and instead was or appeared to be a burn. C.C. admitted at trial that her injury was not caused by a dog bite or by putting her hand on a stove but by appellant and explained why she did not tell the truth for several days. Trial testimony further showed that C.C. was afraid of appellant. Consequently, we decline to overturn the jury's verdict because C.C. told conflicting stories. As the trier of fact, the jury was in the best position to judge her credibility and determine what weight to give to her testimony. *State v. Wright*, 12th Dist. Fayette No. CA2017-10-021, 2018-Ohio-1982, ¶ 30. By its verdict, the jury plainly chose to credit C.C.'s testimony.

{¶ 72} Trial testimony further showed that appellant disliked and disdained C.C., thus

providing a motive to harm her, lied about why she took C.C. out of school early on the Monday after the incident, provided conflicting statements as to when she first became aware of C.C.'s injuries, lied about C.C.'s alleged behavioral issues at school, and manipulated J.B.'s memory of two events related to C.C.'s injury, namely when appellant became aware of the injury and whether she performed a Google search regarding blisters. Certainly, the testimony of Father and J.B. on behalf of appellant contradicted if not undermined several of appellant's statements.

{¶ 73} In light of the foregoing, we find that appellant's conviction for child endangering is not against the manifest weight of the evidence. The jury heard all of the testimony, considered the evidence, and found the state's theory of the case and its witnesses credible, including C.C. We will not disturb the jury's verdict on appeal. Our determination that the conviction is supported by the manifest weight of the evidence is also dispositive of the issue of sufficiency. *Peyton*, 2017-Ohio-243 at ¶ 48.

{¶ 74} Appellant's fifth assignment of error is overruled.

{¶ 75} Assignment of Error No. 6:

{¶ 76} THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT-APPELLANT'S PROPOSED JURY INSTRUCTIONS.

{¶ 77} Appellant argues the trial court erred in refusing to give a special jury instruction concerning the credibility of child witnesses and the weight to be given their testimony.

{¶ 78} This court reviews the trial court's decision refusing to provide the jury with a requested jury instruction for an abuse of discretion. *State v. Wolons*, 44 Ohio St.3d 64, 68 (1989); *State v. Doby*, 12th Dist. Butler No. CA2013-05-084, 2013-Ohio-2471, ¶ 17.

{¶ 79} We find no abuse of discretion. Following a competency hearing, the trial court found that C.C. was competent to testify at trial. As a competent witness, C.C.'s

testimony was subject to scrutiny like any other witness. *State v. Jerome*, 3d Dist. Marion No. 9-95-54, 1996 Ohio App. LEXIS 2083, *11 (May 13, 1996). Furthermore, the trial court gave a proper general jury instruction stating that the jurors were the sole judges of the credibility of the witnesses and indicating what factors they should consider when judging such credibility. This instruction applied equally to C.C. No special instruction was warranted. *Id.*; *State v. Workman*, 14 Ohio App.3d 385, 392 (8th Dist.1984); *State v. McGuire*, 9th Dist. Summit Nos. 16423 and 16431, 1994 Ohio App. LEXIS 5670, *29 (Dec. 14, 1994).

{¶ 80} Appellant's sixth assignment of error is overruled.

{¶ 81} Assignment of Error No. 7:

{¶ 82} THE DEFENDANT-APPELLANT'S RIGHTS UNDER THE CONFRONTATION CLAUSE AND DUE PROCESS CLAUSE WERE VIOLATED IN MULTIPLE WAYS.

{¶ 83} At trial, the trial court admitted two out-of-court statements made by C.C. as excited utterances. The first statement was made by C.C. to her teacher on September 20, 2017, three days before the incident. The second statement was made by C.C. to Mother on September 28, 2017, five days after the incident. Appellant argues that the trial court erred by admitting the foregoing statements because C.C. was "no longer under the stress of the event," and the statements were not spontaneous, but rather, were the product of C.C.'s reflection and thus did not fit within the "excited utterance" exception to the hearsay rule. Appellant further argues the statements violated her Confrontational Clause rights.

{¶ 84} Contrary to appellant's assertion, we first note that we are not presented with a Confrontation Clause issue because C.C. was available to testify, did testify at trial, and was subject to cross-examination on the statements she made to her teacher and Mother. *State v. Pence*, 12th Dist. Warren No. CA2012-05-045, 2013-Ohio-1388, ¶ 37; *State v.*

*Kersbergen*, 12th Dist. Butler No. CA2014-10-218, 2015-Ohio-3103, ¶ 68.

{¶ 85} "Hearsay" is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay is generally inadmissible in court unless the testimony is deemed "not hearsay" under Evid.R. 801(D) or falls under one of the hearsay exceptions articulated in Evid.R. 803 and 804, such as an excited utterance. Evid.R. 803(2) defines "excited utterance" as a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

{¶ 86} An out-of-court statement qualifies as an excited utterance if "(1) the statement was made in reaction to a startling event; (2) the statement was made under the stress of excitement caused by the event; and (3) the statement relates to the event." *State v. Nitz*, 12th Dist. Butler No. CA2003-09-228, 2004-Ohio-6478, ¶ 20. An out-of-court declarant's statement made in response to a question may fit within the "excited utterance" exception to the hearsay rule if the questioning "(1) is neither coercive nor leading, (2) facilitates the declarant's expression of what is already the natural focus of the declarant's thoughts, and (3) does not destroy the domination of the nervous excitement over the declarant's reflective faculties." *State v. Wallace*, 37 Ohio St.3d 87 (1988), paragraph two of the syllabus.

{¶ 87} We find that the trial court did not err in admitting the teacher's testimony regarding what C.C. told her on Wednesday, September 20, 2017. The teacher testified that C.C. was very upset and crying a lot that day. C.C. told her teacher she was upset because she was going to appellant's home at the end of the day rather than to Mother's home as was typical every Wednesday. This statement, unrelated to the incident, was offered to establish why C.C. was upset and that she was afraid of appellant. The statement was properly admitted as evidence under Evid.R. 803(3), which permits hearsay evidence

of a declarant's "then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health)[.]" *See In re C.C.*, 2d Dist. Montgomery No. 26864, 2016-Ohio-1417. "[T]estimony of state-of-mind witnesses, that the victim was fearful and apprehensive [is] not inadmissible hearsay and [is] properly admitted." *State v. O'Neal*, 87 Ohio St.3d 402, 411 (2000). Consequently, any error in the trial court's admission of the statement as an excited utterance is harmless. *See State v. Buchanan*, 12th Dist. Clermont No. CA98-09-077, 1999 Ohio App. LEXIS 2243 (May 17, 1999).

{¶ 88} We likewise find that the trial court did not err in admitting Mother's testimony that on September 28, 2017, C.C. told her appellant had burned C.C.'s right palm with a lighter. Mother testified that while lying in bed with C.C. after their visit to Shriner's Hospital, C.C. began "fiddling," a sign she was thinking. Mother asked her if there was something she wanted to tell. C.C. started crying, told Mother it was really hard to say because she was scared, and then described what appellant did to her.

{¶ 89} Although five days had passed from the time of the incident to the time C.C. told Mother, it is well settled that "there is no per se amount of time after which a statement can no longer be considered to be an excited utterance." *State v. Taylor*, 66 Ohio St.3d 295, 303 (1993). When C.C. told Mother on September 28, 2017, the child was finally done with police questioning, forensic interviews, and medical appointments and this was the first real opportunity she had to tell Mother about the incident.

{¶ 90} Moreover, C.C. was only seven years old at the time of her statement to Mother. It has been recognized that the "excited utterance" exception is entitled to a more expansive interpretation in cases of child abuse, since "children are likely to remain in a state of nervous excitement longer than would an adult," and children have "limited reflective powers." *Id.* at 304; *Nitz*, 2004-Ohio-6478 at ¶ 24. This court has recognized that

"declarations of children in their tender years may be particularly trustworthy." *State v. Brown*, 112 Ohio App.3d 583, 602 (12th Dist.1996). Given C.C.'s age, it was not unreasonable for the trial court to conclude that her statement to Mother that appellant burned her hand with a lighter was made under the stress of the excitement caused by appellant's actions in burning her, and not as a result of her reflection.

{¶ 91} Lastly, Mother's question to C.C. was not coercive or leading. It merely facilitated C.C.'s expression of what was already the natural focus of her thoughts, and did not destroy the domination of the nervous excitement over C.C.'s reflective faculties. *Nitz* at ¶ 25; *Wallace,* 37 Ohio St.3d 87, paragraph two of the syllabus.

{¶ 92} Appellant's seventh assignment of error is overruled.

{¶ 93} Judgment affirmed.

HENDRICKSON, P.J., and S. POWELL, J., concur.