MARY J. BOYLE, J.:
 

 {¶ 1} Defendant-appellant, George Mincy ("Mincy"), appeals his conviction and raises the following assignments of error for our review:
 

 1. The trial court deprived George Mincy of a fair trial when it commented unfavorably on his decision to exercise his Fifth Amendment right to remain silent.
 

 2. The trial court committed reversible error when it found George Mincy guilty of violating R.C. 2919.25(A) based on a finding sufficient only to support a violation of R.C. 2919.25(C), which was not charged and is not a lesser included offense of R.C. 2919.25(A).
 

 3. The trial court erred when it found evidence sufficient to convict George Mincy of only a fourth degree misdemeanor but nevertheless sentenced Mincy as if he had been convicted of a first degree misdemeanor.
 

 4. There was insufficient evidence to permit a reasonable trier of fact to find beyond a reasonable doubt that George Mincy violated R.C. 2919.25(A).
 

 5. The trial court deprived George Mincy of a fair trial when it * * * questioned the complainant after trial but before rendering a verdict.
 

 {¶ 2} We find that there was sufficient evidence to support Mincy's conviction for domestic violence and, therefore, overrule his fourth assignment of error. We also overrule his fifth assignment of error. Nevertheless, finding merit to Mincy's first assignment of error, we vacate Mincy's conviction and remand for a new trial. Our resolution of Mincy's first assignment of error renders his second and third assignments of error moot.
 

 I. Procedural History and Factual Background
 

 {¶ 3} On May 30, 2017, Mincy was charged with domestic violence under R.C. 2919.25(A), which states, "No person shall knowingly cause or attempt to cause physical harm to a family or household member." The charges were based on statements made by the complainant and alleged victim, Charrell Mincy ("Charrell"), George Mincy's 21-year-old daughter.
 

 {¶ 4} Mincy pleaded not guilty to the charge, and the matter proceeded to a bench trial, where the following evidence was presented.
 

 {¶ 5} On May 29, 2017, Charrell was at her parents' house where she lived with her son. Charrell stated that around 7:00 p.m. she went inside to grab a can of pop from the kitchen. According to Charrell, Mincy was in the kitchen and they had an argument about her taking the last can of pop and cursed at one another. Charrell testified that she walked out of the house with the can. She stated that Mincy followed her outside and said, "You'd better watch who you're talking to," to which Charrell responded that Mincy should "get out [of her] face." She testified that Mincy then stated that he was going to "slap the s*** out [of her]," and that she responded, "You smack me, I'll beat your a**." She stated that Mincy then "walked up to [her] then he walked away and then he walked back and he smacked the pop out of [her] hand and then he smacked [her]" in the head.
 

 {¶ 6} Charrell testified that she called the police, who arrived and took Charrell's statement as well as pictures. Charrell testified that she did not suffer any injury as a result of Mincy's smack.
 

 {¶ 7} Officer James Sanders of the Cuyahoga Metropolitan Housing Authority Police Department testified that he was dispatched to Mincy's house on May 29, 2017, for a report of domestic violence. After speaking to Charrell, Sanders testified that he spoke to Mincy, who told him that "there was a verbal argument between him and his daughter." He stated that another officer on the scene advised him to place Mincy under arrest.
 

 {¶ 8} The city then rested, and Mincy moved for an acquittal under Crim.R. 29. The trial court denied Mincy's motion. Mincy then rested and renewed his Crim.R. 29 motion, which the court again denied.
 

 {¶ 9} After the city and Mincy presented their closing arguments, the court asked Charrell a number of questions about her son, educational level, work history, and about the events on May 29, 2017. The trial court also commented on Charrell's verbal pronunciation and asked her to enroll her child in daycare and go back to school. The city objected to the trial court's questions.
 

 {¶ 10} The trial court also made a number of comments concerning Mincy's decision not to testify. Specifically, the trial court stated, "I'm just trying to get some stuff clear in my head. This is an interesting
 set of facts. This young man chose not to testify. I had some questions. That's the only reason I'm asking." Moments later, the trial court stated:
 

 I have similar questions for this young man, but he didn't testify. * * * I cannot find some questions I need answers to. And it's his right. It's his right not to testify. Everybody has a right to remain silent and not testify. Public defender is relying upon the unknown, for the testimony to carry itself.
 

 {¶ 11} The trial court also stated, "I would like to ask how this could have been avoided, but I can't ask him because he chose not to say anything, so I can't ask him."
 

 {¶ 12} The trial court ultimately found Mincy guilty and sentenced him to a 180-day suspended term of incarceration and imposed a $1,000 fine of which $700 was suspended.
 

 {¶ 13} Mincy appealed, and we sua sponte remanded the case to the trial court to correct a clerical error contained in the trial court's August 9, 2017 journal entry; specifically, the entry did not show that the trial court found Mincy guilty of violating R.C. 2919.25(A). The trial court corrected the clerical error on March 13, 2018, and Mincy's appeal is now properly before us.
 

 II. Law and Analysis
 

 {¶ 14} For the ease of discussion, we will address Mincy's assignments of error out of order.
 

 A. Sufficiency
 

 {¶ 15} In his fourth assignment of error, Mincy argues that his conviction under R.C. 2919.25(A) was not supported by sufficient evidence.
 

 {¶ 16} A sufficiency challenge essentially argues that the evidence presented was inadequate to support the jury verdict as a matter of law.
 
 State v. Thompkins
 
 ,
 
 78 Ohio St.3d 380
 
 , 386,
 
 678 N.E.2d 541
 
 (1997). " 'The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution,
 
 any
 
 rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' (Emphasis sic.)"
 
 State v. Getsy
 
 ,
 
 84 Ohio St.3d 180
 
 , 193,
 
 702 N.E.2d 866
 
 (1998), quoting
 
 Jackson v. Virginia
 
 ,
 
 443 U.S. 307
 
 ,
 
 99 S.Ct. 2781
 
 ,
 
 61 L.Ed.2d 560
 
 (1979). "[A] conviction based on legally insufficient evidence constitutes a denial of due process."
 
 Thompkins
 
 at 386,
 
 678 N.E.2d 541
 
 , citing
 
 Tibbs v. Florida
 
 ,
 
 457 U.S. 31
 
 ,
 
 102 S.Ct. 2211
 
 ,
 
 72 L.Ed.2d 652
 
 (1982). When reviewing a sufficiency of the evidence claim, we review the evidence in a light most favorable to the prosecution.
 
 State v. Hill
 
 ,
 
 75 Ohio St.3d 195
 
 , 205,
 
 661 N.E.2d 1068
 
 (1996).
 

 {¶ 17} Mincy argues that there was insufficient evidence that Charrell suffered "physical injury" as required under R.C. 2919.25(A). We disagree.
 

 {¶ 18} " R.C. 2919.25(A) does not require the state to prove that a victim has sustained actual injury since a defendant can be convicted of domestic violence for merely attempting to cause physical harm to a family member."
 
 State v. Spade
 
 , 5th Dist. Delaware No. 08 CAC 04 0017,
 
 2009-Ohio-2004
 
 ,
 
 2009 WL 1145267
 
 , ¶ 26, citing
 
 State v. Nielsen
 
 ,
 
 66 Ohio App.3d 609
 
 ,
 
 585 N.E.2d 906
 
 (6th Dist.1990). We have recognized that principle on a number of occasions.
 
 See
 

 State v. Stover
 
 , 8th Dist. Cuyahoga No. 104388,
 
 2017-Ohio-291
 
 ,
 
 2017 WL 389731
 
 , ¶ 15, citing
 
 Cleveland v. Amoroso
 
 , 8th Dist. Cuyahoga No. 100983,
 
 2015-Ohio-95
 
 ,
 
 2015 WL 178418
 
 ("[A]n offender does not have to cause a tangible injury to his victim in order to be convicted of domestic violence in violation of R.C. 2919.25(A).");
 

 Strongsville v. Beall,
 
 8th Dist. Cuyahoga No. 103051,
 
 2016-Ohio-1222
 
 ,
 
 2016 WL 1176224
 
 , ¶ 7 (A defendant can be convicted of domestic violence under R.C. 2919.25(A)"even without a tangible injury * * * [if there is evidence that the defendant] was attempting to cause physical harm[.]").
 

 {¶ 19} While Charrell stated that she did not suffer any injury as a result of Mincy's strike, she testified that Mincy followed her outside, cursed at her and told her he was going to "slap the s*** out of you[,]" slapped her drink out of her hand, and struck her on the side of her head. Like
 
 Stover
 
 and
 
 Beall
 
 , Charrell's testimony establishes that Mincy was attempting to cause her physical harm by striking her in the head.
 
 See
 

 Ankenbruck v. Ankenbruck
 
 , 11th Dist. Trumbull No. 99-T-0144,
 
 2000 WL 1804360
 
 , 3 (Dec. 8, 2000), citing
 
 State v. Blonski
 
 ,
 
 125 Ohio App.3d 103
 
 ,
 
 707 N.E.2d 1168
 
 (9th Dist.1997) ("By itself, an open-handed slap to the face has been considered an attempt to cause bodily injury, and, thus, constituted domestic violence.").
 

 {¶ 20} Mincy also argues that there was insufficient evidence that he acted "knowingly." "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Charrell testified that Mincy smacked her in the head. That testimony alone is sufficient to show that Mincy acted knowingly.
 
 See
 

 State v. Habo
 
 , 11th Dist. Portage No. 2012-P-0056,
 
 2013-Ohio-2142
 
 ,
 
 2013 WL 2308483
 
 , ¶ 18 (finding sufficient evidence that the appellant "knowingly caused or attempted to cause physical harm to sustain a conviction of domestic violence" because a witness testified that the appellant "smack[ed] their daughter across the face");
 
 State v. Hill
 
 , 2d Dist. Montgomery No. 20678,
 
 2005-Ohio-3701
 
 ,
 
 2005 WL 1704928
 
 , ¶ 9 ("Hill's conviction can rest independently upon his having allegedly punched Edmondson 'into the gut,' which a reasonable finder of fact could find to have been an act whereby Hill would have been aware that his conduct would probably cause injury, satisfying the culpability state of knowingly[.]").
 

 {¶ 21} Further, while Charrell was the only witness to testify, courts consistently hold that a victim's testimony can constitute sufficient evidence for a conviction.
 
 See
 

 State v. White
 
 , 3d Dist. Seneca No. 13-16-21,
 
 2017-Ohio-1488
 
 ,
 
 2017 WL 1436371
 
 , ¶ 36, citing
 
 State v. Roberts
 
 , 1st Dist. Hamilton No. C-040547,
 
 2005-Ohio-6391
 
 ,
 
 2005 WL 3240123
 
 (a rape victim's testimony was sufficient evidence of penetration);
 
 State v. Quinn
 
 , 2d Dist. Clark,
 
 2016-Ohio-139
 
 ,
 
 57 N.E.3d 379
 
 , ¶ 52 ("Based on [the victim's] testimony, which was consistent with the statements she made to others on the evening of the incident, the record supports a conclusion that the jury had sufficient evidence to convict Quinn of two counts of domestic violence.");
 
 State v. W.J.,
 
 10th Dist. Franklin No. 14AP-457,
 
 2015-Ohio-2353
 
 ,
 
 2015 WL 3757469
 
 , ¶ 35, citing
 
 State v. Timmons
 
 , 10th Dist. Franklin No. 13AP-1038,
 
 2014-Ohio-3520
 
 ,
 
 2014 WL 4049815
 
 ("A victim's testimony is sufficient evidence to support sexual conduct by vaginal intercourse or fellatio.");
 
 State v. Bacho
 
 , 8th Dist. Cuyahoga No. 93828,
 
 2010-Ohio-4885
 
 ,
 
 2010 WL 3910757
 
 , ¶ 13 ("S.W.'s testimony provides ample support for appellant's conviction of these charges.");
 
 State v. Wring
 
 , 8th Dist. Cuyahoga No. 85711,
 
 2005-Ohio-5443
 
 ,
 
 2005 WL 2593610
 
 , ¶ 11 (The state "presented sufficient evidence to support the theft conviction through the victim's testimony.");
 
 State v. Williams
 
 , 8th Dist. Cuyahoga No. 57464,
 
 1990 WL 200268
 
 , 2 (Nov. 29, 1990) ("A victim's testimony, if believed, is sufficient to obtain and sustain a rape conviction.").
 

 {¶ 22} In fact, in
 
 Amoroso
 
 , 8th Dist. Cuyahoga No. 100983,
 
 2015-Ohio-95
 
 , we stated:
 

 Amoroso contends that his conviction was not supported by sufficient evidence because it was based solely upon Patricia's testimony. He maintains that there was no physical evidence of her injuries. Looking at the evidence in a light most favorable to the state, however, Patricia's testimony was sufficient to establish that Amoroso committed domestic violence against her beyond a reasonable doubt.
 

 Id.
 
 at ¶ 30.
 

 {¶ 23} Although not directly related to the issue of sufficiency, the dissent finds it "absurd" that Mincy was unable to argue the parental-discipline affirmative defense because Charrell was older than 18.
 

 {¶ 24} Foremost, whether Mincy was entitled to an affirmative defense has no bearing on the sufficiency of the evidence underlying his conviction.
 
 See
 

 State v. Hancock
 
 ,
 
 108 Ohio St.3d 57
 
 ,
 
 2006-Ohio-160
 
 ,
 
 840 N.E.2d 1032
 
 , ¶ 37, quoting
 
 Caldwell v. Russell
 
 ,
 
 181 F.3d 731
 
 (6th Cir.1999) ("[T]he due process 'sufficient evidence' guarantee does not implicate affirmative defenses, because proof supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime.");
 
 State v. Simes
 
 , 8th Dist. Cuyahoga No. 103672,
 
 2016-Ohio-7300
 
 ,
 
 2016 WL 5940204
 
 , ¶ 20, citing
 
 Hancock
 
 ("[A] sufficiency challenge does not implicate affirmative defenses.").
 

 {¶ 25} Further, it is clear that the parental-discipline affirmative defense is inapplicable when the victim is "legally an adult."
 
 State v. Blevins
 
 ,
 
 133 Ohio App.3d 196
 
 , 198,
 
 727 N.E.2d 169
 
 (12th Dist.1999) ;
 
 see also
 

 State v. Miller
 
 ,
 
 134 Ohio App.3d 649
 
 , 652,
 
 731 N.E.2d 1192
 
 (1st Dist.1999), citing R.C. 2912.22(B) ("[A] parent may use reasonable corporal punishment as a means to discipline a child who is under the age of eighteen[.]"). Here, Charrell was 21 years old at the time of the incident and, therefore, that affirmative defense was clearly not available to Mincy.
 

 {¶ 26} Finally, to the extent that the dissent reasons that Mincy was the "head-of-household who, * * * provide[d] a home and support for [Charrell] and her child" and therefore had a "right to reasonably discipline or demand respect in his home," once again, the right to reasonably discipline one's child with physical force is not eternal. Instead, that right ends when the child turns 18. While we are sympathetic to the fact that a minor family feud over a can of pop has resulted in criminal charges that could have lasting implications for Mincy, we cannot excuse Mincy's conduct simply because he financially supports his adult daughter and grandchild.
 

 {¶ 27} Therefore, we find that there is sufficient evidence to support Mincy's conviction for domestic violence under R.C. 2919.25(A) based upon Charrell's testimony and overrule his fourth assignment of error.
 

 B. Mincy's Right to a Fair Trial
 

 {¶ 28} Mincy's first and fifth assignments of error both argue that the trial court deprived him of a fair trial when it (1) "commented unfavorably on his decision to exercise his Fifth Amendment right to remain silent," and (2) "questioned the complainant after trial but before rendering a verdict."
 

 {¶ 29} Because the trial court questioned Charrell before it commented on Mincy's right to remain silent, we will analyze the trial court's questioning of Charrell first.
 

 {¶ 30} Evid.R. 614(B) allows a trial court to interrogate witnesses in an impartial manner.
 

 In questioning a witness pursuant to Evid.R. 614(B), a court may not indicate by its intensity, tenor, range, and persistence the court's opinion of a witness's credibility or the sufficiency of the evidence. * * * Furthermore, a trial judge's questions must be relevant and void of a suggestion of bias[.]
 

 State v. Wilbon
 
 , 8th Dist. Cuyahoga No. 82934,
 
 2004-Ohio-1784
 
 ,
 
 2004 WL 743881
 
 , ¶ 8, citing
 
 State v. Davis
 
 ,
 
 79 Ohio App.3d 450
 
 ,
 
 607 N.E.2d 543
 
 (4th Dist.1992), and
 
 Sandusky v. DeGidio
 
 ,
 
 51 Ohio App.3d 202
 
 ,
 
 555 N.E.2d 680
 
 (6th Dist.1988).
 

 {¶ 31} We review "a trial court's interrogation of a witness for an abuse of discretion."
 
 Wilbon
 
 at ¶ 9, citing
 
 State v. Prokos
 
 ,
 
 91 Ohio App.3d 39
 
 ,
 
 631 N.E.2d 684
 
 (4th Dist.1993).
 

 {¶ 32} Here, after the trial concluded, the trial court asked Charrell about how she cared for her child, her level of education, work history, and manner of speech. A review of the transcript of the proceedings shows that the trial court was scolding Charrell for her life choices and admonishing her for the way she spoke. Specifically, the trial court made the following statements:
 

 TRIAL COURT: You've got one child?
 

 CHARRELL: Yeah.
 

 TRIAL COURT: Yeah?
 

 CHARRELL: Yes.
 

 TRIAL COURT: How do you spell yeah?
 

 CHARRELL: Hmm.
 

 TRIAL COURT: Huh. How do you spell huh?
 

 CHARRELL: H-u-m.
 

 * * *
 

 TRIAL COURT: Have you attempted to go back to school? Have you enrolled back in a school?
 

 CHARRELL: No.
 

 TRIAL COURT: So you said you're still trying to go back?
 

 CHARRELL: Yeah.
 

 TRIAL COURT: Yeah?
 

 CHARRELL: Yes.
 

 TRIAL COURT: Is yeah proper English?
 

 CHARRELL: No.
 

 TRIAL COURT: Why do you continue to say it, especially in court? Where you are sitting like this, aren't you supposed to be talking proper English?
 

 CHARRELL: Yes.
 

 * * *
 

 TRIAL COURT: Now Ms. Mincy, if you would do me a favor, maybe yourself, if you can call Head Start, see if you can enroll your child in the program and get some daycare and that might be helpful because if your child's gonna grow up talking like you, that might be a problem. Your communication skills are somewhat lacking. And it would be nice if you would also in my opinion enroll in school. I cannot make you go to school, but after you've had the work experiences you've had and the life experiences you've had, it might be beneficial that you get back to school for your degree so you can further your education.
 

 {¶ 33} While we find the trial court's timing of its questions as well as its questioning of, statements to, and treatment of Charrell to be concerning, the trial court's questions were not prejudicial to Mincy.
 
 See
 

 State v. Baston
 
 ,
 
 85 Ohio St.3d 418
 
 , 426,
 
 709 N.E.2d 128
 
 (1999), citing
 
 Sandusky
 
 (overruling the appellant's assignment of error concerning the panel's questions because
 "[t]he questioning was neither excessive nor prejudicial to the defendant."). If anything, the trial court's questions were prejudicial to the city, which objected to the trial court's questions. Moreover, Mincy has not shown which questions were prejudicial to him and, therefore, we overrule his fifth assignment of error.
 

 {¶ 34} Turning to Mincy's first assignment of error and his argument concerning his right to remain silent, the Fifth Amendment to the Constitution of the United States provides that no person "shall be compelled in any criminal case to be a witness against himself[,]" and applies to the states through the Due Process Clause of the Fourteenth Amendment.
 
 Malloy v. Hogan
 
 ,
 
 378 U.S. 1
 
 , 6,
 
 84 S.Ct. 1489
 
 ,
 
 12 L.Ed.2d 653
 
 (1964). "When a defendant is instructed that he has the 'right to not testify at trial,' it follows that he has a right to remain silent at trial and cannot be compelled to testify against himself."
 
 State v. McElroy
 
 , 8th Dist. Cuyahoga Nos. 104639, 104640, and 104641,
 
 2017-Ohio-1049
 
 ,
 
 2017 WL 1091642
 
 , ¶ 27, citing
 
 State v. Hayes
 
 , 11th Dist. Portage No. 2014-P-0044,
 
 2016-Ohio-2794
 
 ,
 
 2016 WL 1734170
 
 . This is often called the privilege against self-incrimination.
 

 Id.
 

 {¶ 35} To warrant reversal, a trial court's error regarding a defendant's privilege against self-incrimination must be structural.
 
 In re K.B.
 
 , 12th Dist. Butler No. CA2006-03-077,
 
 2007-Ohio-1647
 
 ,
 
 2007 WL 1041427
 
 , ¶ 22. A structural error occurs when a defendant suffers a violation of his constitutional rights.
 
 See
 

 State v. Miller
 
 , 9th Dist. Summit No. 27048,
 
 2015-Ohio-279
 
 ,
 
 2015 WL 340936
 
 , ¶ 8 ("A court commits structural error when it wrongfully denies a defendant his [Sixth Amendment right to his] counsel of choice[.]");
 
 State v. Williams
 
 , 10th Dist. Franklin No. 02AP-507,
 
 2003-Ohio-2694
 
 ,
 
 2003 WL 21213402
 
 , ¶ 45, citing
 
 State v. Hill
 
 ,
 
 92 Ohio St.3d 191
 
 ,
 
 749 N.E.2d 274
 
 (2001) ("Structural errors 'deprive defendants of basic protections without which a criminal trial cannot [reliably] serve its function as a vehicle for determination of guilt or innocence.' "). Such an error "affect[s] the framework within which the trial proceeds," and is more than "simply an error in the trial process itself."
 
 Arizona v. Fulminante
 
 ,
 
 499 U.S. 279
 
 , 310,
 
 111 S.Ct. 1246
 
 ,
 
 113 L.Ed.2d 302
 
 (1991).
 

 {¶ 36} "[N]either a prosecutor nor a judge may comment on a criminal defendant's failure to testify. * * * Consistent with [that] principle, a trial judge, sitting as a trier of fact, may not consider a criminal defendant's failure to testify as evidence of the defendant's guilt."
 
 In re K.B.
 
 at ¶ 10-11.
 

 {¶ 37} Nevertheless, "[i]n a bench trial, the trial court is presumed to have considered only admissible evidence unless the record indicates otherwise."
 
 State v. Reddy
 
 ,
 
 192 Ohio App.3d 108
 
 ,
 
 2010-Ohio-5759
 
 ,
 
 948 N.E.2d 454
 
 , ¶ 58 (8th Dist.), citing
 
 Cleveland v. Welms
 
 ,
 
 169 Ohio App.3d 600
 
 ,
 
 2006-Ohio-6441
 
 ,
 
 863 N.E.2d 1125
 
 (8th Dist.). "This presumption 'may be overcome only by an affirmative showing to the contrary by the appellant.' "
 
 State v. Pearson
 
 , 10th Dist. Franklin Nos. 14AP-793 and 14AP-816,
 
 2015-Ohio-3974
 
 ,
 
 2015 WL 5703196
 
 , ¶ 13, quoting
 
 State v. Wiles
 
 ,
 
 59 Ohio St.3d 71
 
 ,
 
 571 N.E.2d 97
 
 (1991).
 

 {¶ 38} In
 
 In re K.B.
 
 , the trial court "made multiple, specific comments concerning appellant's failure to testify[,]" including, "And I guess the biggest let down I had because I anxiously awaited, and I think any jury or anybody would anxiously await what [appellant] has to say. [He] didn't want to speak at the trial[,]" and "No, he never got on the stand and that was critical. It's a trial tactic, whatever."
 
 Id.
 
 at ¶ 17-19. On appeal, the Twelfth District
 found that the court's statements, especially its statement that the appellant's failure to testify was "critical," "strongly suggest that it considered appellant's silence in reaching its delinquency decision" and violated the appellant's Fifth Amendment rights.
 
 Id.
 
 at ¶ 20. The court found that the trial court's "repeated statements regarding appellant's silence * * * strongly suggest a shift in the burden of proof from the state to appellant, requiring appellant to explain his conduct."
 
 Id.
 
 at ¶ 22. As a result, the court found that the trial court's error was structural and required reversal.
 
 Id.
 
 at ¶ 23.
 

 {¶ 39} In contrast, in
 
 Pearson
 
 , the trial court, before rendering its verdict, "wondered why the appellants would go into that closed motel with a cluttered and dangerous hall and stairway, stay 15 minutes, give or take, if not to do a theft?"
 
 Id.
 
 at ¶ 10. On review, the Tenth District chose not to interpret "the trial court's comments as referring to Hammond's decision not to testify."
 
 Id.
 
 at ¶ 14. Instead, the court found that the trial court's comments referred "to issues raised at trial but not sufficiently addressed to the trial court's satisfaction."
 
 Id.
 

 {¶ 40} Similarly, in
 
 Reddy
 
 , we found that when the trial court stated "that Reddy failed to explain the evidence against him," it meant that "his defense did not adequately address all of the evidence against him."
 
 Id.
 
 at ¶ 59. We, therefore, found that the trial court's statement "did not reference Reddy's decision not to testify[,]" and we overruled his assignment of error.
 
 Id.
 

 {¶ 41} After questioning Charrell but prior to rendering its verdict, the trial court stated, "I'm just trying to get some stuff clear in my head. This is an interesting set of facts. This young man chose not to testify. I had some questions. That's the only reason I'm asking." Moments later, the trial court stated, "I have similar questions for this young man, but he didn't testify. * * * I cannot find some questions I need answers to. And it's his right. It's his right not to testify. Everybody has a right to remain silent and not testify. Public defender is relying upon the unknown, for the testimony to carry itself." The trial court also stated, "I would like to ask how this could have been avoided, but I can't ask him because he chose not to say anything, so I can't ask him." The trial court then found Mincy guilty of domestic violence.
 

 {¶ 42} After comparison to
 
 In re K.B.
 
 ,
 
 Pearson
 
 , and
 
 Reddy
 
 , we find that the trial court's statements concerning Mincy's decision not to testify violated his Fifth Amendment rights. Unlike
 
 Pearson
 
 and
 
 Reddy
 
 , the trial court's statements were not expressing its belief that Mincy's defense counsel failed to address the evidence against him. Instead, like
 
 In re K.B.
 
 and despite the trial court's recognition of Mincy's right to not testify, the trial court made numerous statements suggesting that Mincy failed to answer questions that the trial court found to be important by choosing to exercise that right. We find that, like
 
 In re K.B.
 
 , the trial court's "repeated statements regarding appellant's silence * * * strongly suggest a shift in the burden of proof from the [city] to [Mincy], requiring [Mincy] to explain his conduct."
 
 Id.
 
 at ¶ 22.
 

 {¶ 43} Therefore, in conclusion, we overrule Mincy's fourth and fifth assignments of error, sustain Mincy's first assignment of error, vacate Mincy's conviction, and remand for a new trial. Further, our resolution of Mincy's first assignment of error renders his second and third assignments of error moot.
 

 {¶ 44} The conviction is vacated and the case is remanded for a new trial.
 

 EILEEN A. GALLAGHER, A.J., CONCURS; ANITA LASTER MAYS, J., DISSENTS WITH SEPARATE OPINION