[Cite as *State v. Bryant*, 2026-Ohio-559.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

STATE OF OHIO,                              :

    Plaintiff-Appellee,            :

                                 No. 115096

v.                                          :

DOURAN M. BRYANT,                           :

    Defendant-Appellant.          :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** February 19, 2026

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-692356-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Mikayla Ortiz, Assistant Prosecuting Attorney, *for appellee.*

Jonathan N. Garver, *for appellant.*


KATHLEEN ANN KEOUGH, J.:

{¶ 1} Defendant-appellant Douran M. Bryant appeals his convictions for kidnapping and aggravated menacing, including the attendant firearm specifications. Finding that Bryant received ineffective assistance from trial counsel, this court reverses his convictions and remands the case for a new trial.

## I. Procedural Background

{¶ 2} On May 24, 2024, Bryant was carjacked and shot in the arm as he wrestled a gun away from one of the carjackers. He fled into a nearby Marathon gas station still holding the firearm. Security video showed that as shots were fired, a female bystander, later identified as the victim ("the victim"), fled into the Marathon gas station and hid in a back stockroom. After Bryant asked the station's employees to call the police, one of the carjackers entered the store and Bryant retreated into the stockroom where, unbeknownst to him, the victim was hiding. According to Bryant, he did not understand why the victim was in the stockroom, but thought she was with the carjackers because she approached him. He denied threatening the victim with a gun or holding her hostage.

{¶ 3} The victim testified that as she was about to leave the stockroom, she encountered Bryant, who pointed the gun at her — "he thought I was trying to set him up." (Tr. 451.) She stated that despite her trying to help him because he was bleeding from his gunshot wound, Bryant held her against the wall and pointed the gun at her head. She denied that he threatened to kill her, but she believed she was going to die. Witness and surveillance evidence corroborated that police had to order Bryant to release the victim, drop the weapon, and surrender himself. Bryant complied without incident.

{¶ 4} In June 2024, the State named Bryant in a three-count indictment, charging him with kidnapping, with one- and three-year firearm specifications, aggravated menacing, and having a weapon while under disability. The State also

sought forfeiture of the weapon. Bryant pleaded not guilty, he received appointed counsel, and trial was scheduled for September 30, 2024.

{¶ 5} On the day of trial, appointed counsel verbally requested the court to refer Bryant for a competency evaluation. Counsel advised the court that based on conversations with Bryant's family, concerns were raised about Bryant's mental health. The court asked if the request was for competency to stand trial and sanity at the time of the act, noting that it was not going to "piecemeal" the requests. (Sept. 30, 2024; tr. 21.)[1] When counsel started to answer, the trial court interjected, "I will grant the motion for competency and sanity at the time of the act." (Tr. at *id.*) The State did not object. The court entered the following order, that states in relevant part:

> [Bryant] is referred to Court Psychiatric Clinic.
> Director, Psychiatric Clinic:
> In accordance with provisions of the Ohio Revised Code, 2945.371 Competence to Stand Trial; etc 2945.371 Sanity at the time of the act[.]
> You are directed to examine Douran Bryant.

{¶ 6} While Bryant was undergoing an evaluation, his family retained counsel to represent him; counsel filed a notice of appearance.

{¶ 7} On October 21, 2024, Bryant appeared in court with new counsel, who stipulated to an October 7, 2024 competency evaluation, finding Bryant

---

[1] At this hearing, appointed counsel also advised the court that Bryant's family had consulted with a new attorney.

incompetent to stand trial.[2]  The State also stipulated to the findings.  The trial court confirmed that Bryant's counsel and the State each received a copy of Dr. Jennifer Franklin's report.

{¶ 8}  Relevant to this appeal, the report noted that Bryant was "referred to the Court Psychiatric Clinic for an evaluation pursuant to [R.C.] 2945.371(A) Competence to Stand Trial *and* Sanity at the Time of the Act."  (Emphasis added.) Under "medical history," Dr. Franklin documented that Bryant "reported that a few years ago he was shot twice in the stomach and has a long scar.  At the time of the instant offense, he was shot in his left arm during a 'carjacking.'"  Under "psychiatric history," Dr. Franklin noted that Bryant had undergone prior evaluations by the court's psychiatric clinic, including in 2002 and again in 2007 for "competency and sanity."  After completing the assessment, Dr. Franklin diagnosed Bryant with posttraumatic stress disorder ("PTSD"), unspecified depressive disorder with psychotic features, and intellectual disability, mild by history.  She opined, based on reasonable psychological certainty, that Bryant was "currently not capable of understanding the nature and objectives of the proceedings against him . . . assisting in his defense . . . and would benefit from a period of competency restoration to stabilize his mental health as well as improve his understanding of the court."  It was Dr. Franklin's opinion that Bryant could be restored to competency within the statutory timeframe.  Based on her finding of

---

[2] Retained counsel did not appear, but a different attorney appeared on her behalf, at retained counsel's request.

incompetency to stand trial, Dr. Franklin stated, "At this time the issue of sanity is deferred."

{¶ 9} During the hearing, the court read the final pages of Dr. Franklin's report into the record, including that "[a]t this time the issue of sanity is deferred." (Oct. 24, 2024; tr. 37.) Following the hearing, the trial court entered a journal entry adopting Dr. Franklin's findings and ordering Bryant to Northcoast Behavioral Health for inpatient competency restoration treatment.

{¶ 10} The record reflects that on January 30, 2025, the trial court conducted a hearing, at which retained counsel appeared. This court does not have a transcript of this hearing. The journal entry provides, in relevant part:

> The State and defense stipulates to the authenticity, admissibility[,] and findings of the competency report submitted on January 23, 2025 by Chandler Hicks, DO, Psychiatrist[.] The court finds [Bryant] competent to stand trial[.]

Although Bryant was declared competent to stand trial, the court's entry did not indicate whether the court or either party addressed Dr. Franklin's "deferral" of an examination for sanity at the time of the act. Moreover, the record does not reflect that defense counsel waived or withdrew the request for the examination. The entry, however, noted that trial remained set for February 20, 2025, denied Bryant's request for release, and continued bond pending trial.

{¶ 11} On this same date, retained counsel filed a notice of self-defense pursuant to Crim.R. 12.2.

{¶ 12} The parties appeared for a morning pretrial on February 10, 2025, where retained counsel was present, but a substitute prosecutor appeared. During the hearing, the trial court recounted that at the previous hearing on January 30, 2025, counsel was provided with a copy of the report finding that Bryant had been restored to competency. It further recounted that defense counsel had concerns about discovery and that the State extended a plea offer. At the end of the hearing, the assistant prosecutor noted that Bryant's notice of self-defense was deficient under Crim.R. 12.2. The pretrial was continued until the afternoon to allow the assigned assistant prosecutor to attend and discuss a plea offer.

{¶ 13} During the afternoon session, discussions about the plea offer occurred, and retained counsel addressed the notice of self-defense, stating that "we just now on January 30th declared [Bryant] competent to testify again." (Feb. 10, 2025; tr. 54.) The State interjected that "there was no self defense" in this case. (*Id*. at tr. 56.) Trial remained set for February 20, 2025.

{¶ 14} On February 12, 2025, Bryant's counsel filed an amended notice of self-defense and further moved for reconsideration of the trial court's denial of transferring the case to the mental-health docket, contending that Bryant's history of mental illness warranted a transfer and that Bryant would benefit from the resources available through that specialized docket. According to the motion, the court's prior decision denying the transfer was because "the charge being a 'felony

of the first degree and that [the court had] the authority to decide to keep it on [its] docket.'" The trial court never ruled on the motion for reconsideration.[3]

{¶ 15} The case was called for trial on February 26, 2025, and the parties continued discussing the plea offer, with the State adding that it would not recommend a particular sentence except that the victim wanted Bryant to receive mental-health treatment. The record is replete with defense counsel expressing that Bryant was confused about the new plea agreement, but Bryant, himself, expressed in open court that he did not want to go to prison because he did not hurt anyone. Trial did not go forward.

{¶ 16} The State then filed a motion in limine, requesting the court to prevent the introduction of evidence regarding the alleged carjacking that occurred prior to the subsequent events in the Marathon gas station. According to the State, the evidence was irrelevant and did not support Bryant's self-defense theory because that incident was separate and did not contribute to the facts of the case. Finally, the State contended that Bryant did not have reasonable grounds to believe the victim was connected with the carjacking because, according to Bryant, the perpetrators were three young males.

{¶ 17} Bryant opposed the State's motion, contending that the evidence regarding the carjacking was relevant because it was probative of his state of mind at the time of the offense.

---

[3] In the court's sentencing journal entry, it stated that "all motions not specifically ruled on prior to filing of this judgment entry are denied as moot."

**{¶ 18}** On March 31, 2025, the case proceeded to a jury trial on all counts, whereupon the State presented testimony from five witnesses and introduced bodycam and security video from the Marathon gas station. During the victim's testimony, she stated that she believed Bryant was being chased by the shooters: "I think they was trying to come in to the store and try to kill him . . . he thought I was trying to set him up." (Tr. 450-451.) She "thought maybe he was on drugs or something . . . I didn't understand what he was talking about . . . I didn't know if he [mistook] me for someone else." (Tr. 451-455.)

**{¶ 19}** The night-shift manager at the Marathon station also testified. The manager stated, "[T]o me, honestly, the way he was reacting, it didn't seem like he focused on what I was saying . . . he just mentioning somebody named Spider. He's like I'm going to call Spider. He's going to know what to do." (Tr. 510-511.) According to the manager, Bryant kept telling the victim to "stop moving" and "you know what you did." (Tr. 511.)

**{¶ 20}** Relevant to the appeal and after the State rested its case-in-chief, the State attempted to limit Bryant from introducing any witness testimony about his state of mind or diagnosis, claiming it was irrelevant. (Tr. 647-648.) The State further asked the court to limit the defense from

> get[ting] into any sanity issues here, especially with the mental health. So at this time defense does not have any doctor on their witnesses. There's no personnel who's testifying as to defendant's mental health. There's no person who is here, would be able to testify as to defendant's state of mind at the time of the offense.

> Sanity referral has not been made prior to the court. So there has been no doctor who is known to the State of Ohio who has evaluated defendant's mental state.

(Tr. 648.) Contrary to the State's assertion, a sanity referral had been made, yet defense counsel did not correct the State's inaccuracy.

{¶ 21} In his defense, Bryant presented testimony from five witnesses, including himself. During Bryant's direct examination, his counsel did not question him about his mental-health diagnoses but only asked him about his understanding of the carjacking, the encounter with the victim, and then his interaction with police and emergency personnel. Although Bryant testified that he had been shot years earlier, his counsel did not ask him any further questions about how the prior shooting may have impacted his state of mind during this recent incident. On cross-examination when the State asked about the medications required to "calm him down" following his arrest, Bryant, for the first time, stated that he suffered from mental-health conditions (tr. 764) and that he was in a "state of shock" because of "the guns." (Tr. 787.) He further stated that as police were "saving him," he was "snapping out of shock." *Id.*

{¶ 22} The jury found Bryant not guilty of having a weapon while under disability, but guilty of Counts 1 (kidnapping) and 2 (aggravated menacing) as charged, including both one- and three-year firearm specifications attendant to Count 1.

{¶ 23} After merger and the application of the Reagan Tokes Law, the trial court ordered Bryant to serve a total prison sentence of seven to nine years. This appeal followed.

## II. The Appeal

{¶ 24} Bryant raises the following six assignments of error:

I. The evidence is insufficient, as a matter of law, to support Bryant's conviction for first-degree felony kidnapping, in violation of R.C. 2905.01(B)(2), because there was no evidence that the offense was committed under circumstances that created a substantial risk of serious physical harm to the victim and because the victim was released in a safe place unharmed.

II. Bryant's convictions are against the manifest weight of the evidence.

III. The trial court committed plain error by refusing to allow defense counsel to conduct voir dire on the subject of self-defense.

IV. The trial court committed plain error by failing to instruct the jury on the lesser-included offense of abduction.

V. The trial court committed plain error by failing to instruct the jury on the inferior-degree offense where the victim was released unharmed in a safe place.

VI. Bryant was denied the right to effective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendments to the Constitution of the United States and Article I, Sections 10 and 16 of the Constitution of the State of Ohio.

After a thorough review of the record, this court finds merit to Bryant's sixth assignment of error, which will be addressed first.

### A. Effective Assistance of Counsel

{¶ 25} In his sixth assignment of error, Bryant contends that he received ineffective assistance of counsel because counsel failed to (1) fully investigate his

mental health and present expert evidence on the subject of his state of mind in support of his self-defense claim; (2) present medical records related to his hospitalization for a gunshot wound he sustained moments before the incident that would have provided a detailed description of his physical injuries and shed light on his state of mind both at the time of the act and when the police interviewed him by telephone at the hospital; (3) object to restrictions on voir dire related to the subject of self-defense; (4) request a jury instruction on the lesser-included offense of abduction; (5) request a jury instruction on an inferior-degree of the offense because the victim was released in a safe place unharmed; and (6) advise the jury of the proper burden of proof. He further contends that while each of counsel's failures may not individually warrant a new trial, the cumulative effect of those failures equates to a finding that he was deprived of his right to effective assistance of trial counsel.

{¶ 26} Based on the entire record before this court, we agree that Bryant's trial counsel rendered ineffective assistance that deprived him of a fair trial. At a minimum, trial counsel failed to investigate Bryant's mental health. This failure prevented Bryant from to presenting or pursuing admissible evidence regarding his state of mind at the time of the act to support a self-defense claim.

{¶ 27} U.S. Const., amend. VI and Ohio Const., art. I, § 10 provide that defendants in all criminal proceedings shall have the assistance of counsel for their defense. The Supreme Court of the United States has recognized that "the right to

counsel is the right to effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

{¶ 28} Reversal of a conviction for ineffective assistance of counsel requires a defendant to show that counsel's performance was deficient and that the deficient performance prejudiced the defense, depriving the defendant of a fair trial. *State v. Guffie*, 2024-Ohio-2163, ¶ 89 (8th Dist.), citing *State v. Hanna*, 2002-Ohio-2221, ¶ 109. Deficient performance occurs when counsel's conduct falls below an objective standard of reasonable representation. *State v. Bell*, 2017-Ohio-7168, ¶ 23 (8th Dist.). Prejudice is found when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

> Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Strickland* at 689.

{¶ 29} Considering "the variety of circumstances faced by defense counsel [and] the range of legitimate decisions regarding how best to represent a criminal defendant," the performance inquiry necessarily turns on "whether counsel's assistance was reasonable considering all the circumstances." *Id.* At all points, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* In short, counsel's errors must be so serious as to render the result of the trial unreliable. *State v. Jamie*, 2015-Ohio-3583, ¶ 24 (8th Dist.).

{¶ 30} The fact that counsel was retained does not alter our review. "[E]ffectiveness of representation by both retained and appointed counsel must be gauged by the same standard." *State v. Hester*, 45 Ohio St.2d 71, 79 (1976), citing *Fitzgerald v. Estelle*, 505 F.2d 1334, 1336 (5th Cir. 1974). "Balancing the rights of the accused and of the public, we hold the test to be whether the accused, under all the circumstances, including the fact that he had retained counsel, had a fair trial and substantial justice was done." *Hester* at *id.*

{¶ 31} Pursuing a self-defense or defense-of-others claim is a strategy decision by trial counsel that this court should not second guess. Based on the record, trial counsel's theory was that Bryant mistakenly believed that the victim was either part of the group who carjacked him or that he believed he was protecting her from the carjackers who entered the store. These theories, although inconsistent, required testimony about Bryant's state of mind at the time of the act.

{¶ 32} In this case, and over the State's objection, the trial court instructed the jury on use of nondeadly force in self-defense.[4]  The court's jury instruction provided, in relevant part:

> To prove that the defendant's use [of] nondeadly force was not in self-defense, the state must prove beyond a reasonable doubt at least one of the following . . .
>
> the defendant did not have reasonable grounds to believe that he was in imminent or immediate danger of bodily harm.  Or three, the defendant did not have an honest belief, even if mistaken, that he was in imminent or immediate danger of bodily harm.
>
> . . .
>
> Test for reasonable grounds and honest belief.  In deciding whether the defendant had a reasonable grounds [sic] to believe and an honest belief that he was in imminent or immediate danger or bodily harm you must put yourself in the position of the defendant with his characteristics, his knowledge or lack of acknowledge [sic], and under the circumstances and conditions that surrounded him at the time.
>
> You must consider the conduct of [the victim] and decide whether her acts and words caused the defendant to reasonably and honestly believe that the defendant was about to received [sic] bodily harm.
>
> Determining reasonable belief.  In determining whether the defendant in using force in self-defense reasonably believed that the force was necessary to prevent injury, loss, or risk to life or safety, you may not consider the possibility of retreat by the defendant.

(Tr. 919-922.)

---

[4] The trial court's instructions to the jury seem to include both deadly and nondeadly force instructions.  (Tr. 919.)  The State asked for a deadly force instruction; Bryant asked for a nondeadly force instruction, to which the trial court responded that the instruction "says both."  (Tr. 845.)  Our review reveals that a nondeadly force instruction was provided, but during one instruction, the court included the phrase "deadly force" when discussing Bryant's use of force.  (Tr. 926.)

{¶ 33} At issue is the second aspect of self-defense — the defendant had a reasonable basis to believe, and an honest belief, even if mistaken, that he was in imminent danger of great bodily harm. *See, e.g., State v. Davidson-Dixon*, 2021-Ohio-1485 (8th Dist.) (nondeadly force; imminent danger of great bodily harm). "[T]he second element of self-defense is a combined subjective and objective test." *State v. Thomas*, 77 Ohio St.3d 323, 330 (1997); *State v. Watson*, 2026-Ohio-188, ¶ 43 (8th Dist.).

{¶ 34} The trier of fact "first must consider the defendant's situation objectively, that is, whether, considering all of the defendant's particular characteristics, knowledge, or lack of knowledge, circumstances, history, and conditions at the time of the attack, [he] *reasonably* believed [he] was in imminent danger." (Emphasis in original.) *Thomas* at *id.*; *see also State v. Palmer*, 2024-Ohio-539, ¶ 25. "Then, if the objective standard is met, the jury must determine if, subjectively, this particular defendant had an *honest* belief that [he] was in imminent danger." (Emphasis in original.) *Thomas* at 331; *State v. Hughkeith*, 2023-Ohio-1217, ¶ 56 (8th Dist.). An "honest belief" may be based on a mistaken notion. *Watson* at ¶ 43, citing *State v. Hunt*, 2023-Ohio-1977, ¶ 26 (8th Dist.). Thus, self-defense is placed on the grounds of the "'bona fides of defendant's belief, and reasonableness therefor, and whether, under the circumstances, he exercised a careful and proper use of his own faculties.'" *Palmer* at ¶ 38 (DeWine, J., dissenting), quoting *State v. Sheets*, 115 Ohio St. 308, 310 (1926).

{¶ 35} Accordingly, self-defense necessarily would involve — as the jury was instructed in this case — the defendant's particular characteristics and history, which often encompasses the defendant's mental-health diagnoses. Although a defendant can testify about how he was feeling, how he processed the situation, and his belief at the time of the events, the necessity of an expert to explain how that diagnosis may affect people in those situations would be relevant and necessary.

{¶ 36} The Ohio Supreme Court recognized that when the issue of self-defense is raised, it may often involve the need for an expert when a diagnosis may contribute to or affect a defendant's state of mind. In *State v. Nemeth*, 82 Ohio St.3d 202, 207 (1998), the Ohio Supreme Court stated that "evidence that would support a defendant's explanation of the events at issue and would provide evidence as to his possible state of mind at the time of the incident is clearly relevant to his or her defense." *See also State v. Coates*, 2025-Ohio-5340, ¶ 130 (8th Dist.) (expert witness permitted to testify about an explanation of PTSD in general, the effects of PTSD in general, and the defendant's diagnosis of PTSD in presenting a claim for self-defense).

{¶ 37} The Ohio Supreme Court further explored effectiveness of counsel in the context of intent and state of mind when presenting a self-defense claim. *State v. Wilson*, 2024-Ohio-776. The plurality opinion held that counsel was ineffective for failing to request a proper jury instruction about the defendant's intent when using self-defense. *Id.* at ¶ 29. The Court noted, "While we typically defer to trial counsel's decisions as a matter of strategy, there is little doubt here that [defense]

counsel's failing to request a self-defense jury instruction — the only defense [the defendant's] testimony supported — cannot be chalked up to trial strategy." *Id*. at ¶ 27.

{¶ 38} We apply the same reasoning here in finding that when counsel chose to pursue a self-defense claim, her representation fell below an objective standard of reasonableness in failing to seek an expert to testify about Bryant's mental-health conditions, including his PTSD diagnosis. This failure cannot be deemed strategic. Based on his diagnosis and the totality of the events as they unfolded that evening — being carjacked, shot, pursued by the carjackers once inside of the gas station, and then his reaction to encountering the victim in the back storeroom — it was possible that Bryant had a mistaken belief about the situation and victim's presence. More importantly, it was possible that Bryant did not know the wrongfulness of his actions, i.e., whether Bryant was sane at the time of the act, which could have been determined by an evaluation — an evaluation that the trial court previously ordered that was never revisited.

{¶ 39} Generally, a trial counsel's failure to seek a competency evaluation or to pursue an insanity defense is not, per se, ineffective assistance of counsel. *State v. Eley*, 2001-Ohio-3447 (7th Dist.), citing *State v. Decker*, 28 Ohio St.3d 137 (1986). The totality of the circumstances must be considered.

{¶ 40} In *State v. Bennett*, 2019-Ohio-2213 (8th Dist.), this court reversed the defendant's conviction, finding that the defendant was deprived of effective assistance of counsel and thus deprived of a fair trial. In *Bennett*, the defendant

had a long history of mental-health issues and despite being referred for competency and sanity evaluations, defense counsel indicated to the court on the day of trial that counsel was unaware of any competency issues and that he believed Bennett received the evaluations. The record, however, revealed that Bennett had not been evaluated. This court noted that both the trial court and defense counsel were aware of the defendant's long history of mental-health issues. *Id.* at ¶ 12. Moreover, this court stated that counsel was on notice of an issue with Bennett's sanity at the time of the act and possibly with her competency based on the underlying facts of the case. *Id.* at ¶ 26.

{¶ 41} The *Bennett* Court recognized that the defendant's participation at trial may have rendered the competency issue harmless, but it focused on the fact that Bennett's sanity at the time of the act was the pertinent issue. *Id.* at ¶ 27. And based on the record, the *Bennett* Court determined that counsel's failure to ensure that the evaluations were reviewed, let alone performed, rendered counsel deficient and prejudicial to Bennett's defense. *Id.* at ¶ 29.

{¶ 42} The separate concurring opinion questioned whether Bennett was prejudiced because the competency report revealed that Bennett was competent to stand trial and the assertion of insanity at the time of the act was potentially abandoned. Nevertheless, the concurring opinion found prejudice "as a failure of the procedure, but not [addressing] the sanity question given Bennett's behavior and past history eliminated her only possible defense." *Id.* at ¶ 33 (S. Gallagher, J., concurring).

{¶ 43} In this case, both evaluations were requested by appointed counsel and ordered by the trial court. The competency evaluation revealed that Bryant suffered from mental-health conditions, was not competent to stand trial, and the issue of whether Bryant was sane at the time of the act was deferred until competency restoration. The court and all parties, including newly retained counsel, received a copy of the evaluation. The restoration evaluation again disclosed Bryant's diagnoses, that included PTSD from prior traumas, including being shot years earlier. Accordingly, all parties and the court were well aware of Bryant's mental-health conditions.

{¶ 44} Accordingly, and following *Bennett*, we find that retained counsel's failure to adequately investigate Bryant's mental health, including seeking an expert and revisiting the trial court's referral for a sanity evaluation after Bryant was restored to competency, fell below an objective standard of reasonableness, thus satisfying the first prong of the *Strickland* standard.

{¶ 45} We now turn to the second prong of *Strickland* — whether the deficiency was prejudicial. Prejudice is found when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

{¶ 46} Bryant, much like the defendant in *Bennett*, was prejudiced by the process itself, such that the only plausible defense was that Bryant's mental-health conditions contributed to his actions and reactions that evening. His defense not

only required a sanity evaluation, but it also necessitated an expert to offer testimony to support and explain Bryant's version of events. Counsel's failure to pursue both prejudiced Bryant's defense such that a reasonable probability exists that undermines the confidence in the outcome.

{¶ 47} Finally, although not per se prejudicial, the record suggests that this case was eligible for transfer to the mental-health docket. Loc.R. 30.1 of the Court of Common Pleas of Cuyahoga County, General Division ("Loc.R. 30.1") governs assignment of criminal cases to the court's mental-health and developmental-disabilities docket. Under Loc.R. 30.1(A), cases involving defendants with "a confirmed severe mental illness with a psychotic feature or developmental disabilities, as determined by the court's guidelines" are eligible for assignment or transfer to the court's mental-health and developmental-disabilities ("MHDD") docket. Loc.R. 30.1(C)(2)(a) further provides, in relevant part: "In cases where it is determined after assignment to a non-MHDD judge that the defendant qualifies for the MHDD docket, the assigned judge may apply to the Administrative Judge for transfer of the case to the MHDD docket."

{¶ 48} In this case and despite two requests, the trial judge inexplicably did not transfer Bryant's case or apply to transfer his case. The record demonstrates that both requests occurred months after Bryant was restored to competency but had not been evaluated for sanity at the time of the act, as previously ordered by the trial court. A review of Dr. Franklin's report would have reminded trial counsel

and the trial court that an evaluation for sanity at the time of the act was deferred until after Bryant was restored.

{¶ 49} Based on the foregoing, we find that Bryant was deprived of his right to effective assistance of trial counsel. Bryant's sixth assignment of error is sustained.

{¶ 50} Having sustained Bryant's sixth assignment of error that affords Bryant a new trial, his remaining assignments of error challenging the weight of the evidence, the trial court's refusal to permit voir dire on self-defense and instruct the jury on lesser-included or inferior offenses, are hereby rendered moot. *See* App.R. 12(A)(1)(c). Bryant's first assignment of error, however, challenging the sufficiency of the evidence is not moot because "retrial is barred if the reversal was based upon a finding that the evidence was legally insufficient to support the conviction." *State v. Thompkins*, 1997-Ohio-52, ¶ 26, citing *Tibbs v. Florida*, 457 U.S. 31 (1982). Accordingly, this assignment of error still requires appellate review.

### B. Sufficiency of the Evidence

{¶ 51} Under a sufficiency review, this court is required to determine whether the prosecution met its burden of production at trial. *State v. Cottingham*, 2020-Ohio-4220, ¶ 32 (8th Dist.). An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a

reasonable doubt. *State v. Murphy*, 2001-Ohio-112. "'The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Walker*, 2016-Ohio-8295, ¶ 12, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 52} Bryant contends in his first assignment of error that the evidence is insufficient, as a matter of law, to support his conviction for first-degree felony kidnapping, in violation of R.C. 2905.01(B)(2), because there was no evidence that the offense was committed under circumstances that created a substantial risk of serious physical harm to the victim and because the victim was released in a safe place unharmed.

{¶ 53} R.C. 2905.01(B)(2) provides that no person, by force, threat, or deception, shall knowingly restrain another of the other person's liberty, under circumstances that create a substantial risk of serious physical harm to the victim. Whether the victim is released in a safe place unharmed is not an element of the offense. *State v. Sanders*, 2001-Ohio-189, ¶ 133. Rather, it is in the nature of an affirmative defense, in which the defendant bears the burden of proof on this issue. *Id.*

{¶ 54} Because it is an affirmative defense, a sufficiency-of-the-evidence challenge is not the proper vehicle for appellate review. *Westlake v. Y.O.*, 2019-Ohio-2432, ¶ 17 (8th Dist.), citing *Cleveland v. Mincy*, 2018-Ohio-3565, ¶ 24 (8th Dist.), citing *State v. Hancock*, 2006-Ohio-160, ¶ 37, quoting *Caldwell v. Russell*,

181 F.3d 731 (6th Cir. 1999) ("[T]he due process 'sufficient evidence' guarantee does not implicate affirmative defenses, because proof supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime.").

{¶ 55} Moreover, the evidence established that Bryant restrained the victim's movement until the police intervened. The victim testified that Bryant held a gun to her head, preventing her from leaving the stockroom. She stated that although he did not threaten to kill her, she believed that she was "going to die." (Tr. 452.) There is no evidence that Bryant released the victim prior to police intervention. Thus, because Bryant did not release the victim of his own accord, the kidnapping charge would be a first-degree felony. *See State v. Huber*, 2003-Ohio-3210, ¶ 13 (8th Dist.).

{¶ 56} Viewing the evidence in the light most favorable to the State, a reasonable factfinder could conclude that Bryant committed the offense of kidnapping as charged in the indictment. His first assignment of error is overruled.

## III. Conclusion

{¶ 57} Bryant was denied effective assistance of trial counsel and his convictions are reversed. The case is remanded to the trial court for a new trial.

{¶ 58} Judgment reversed and remanded.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. Case remanded to the trial court for a new trial.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, JUDGE

LISA B. FORBES, P.J., and
DEENA R. CALABRESE, J., CONCUR